Opinion issued August 30, 2018



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――

## NO. 01-16-00985-CV

―――――――――――――

## ELIZABETH C. PEREZ, Appellant

## V.

## SYLVESTER TURNER, MAYOR, KARUN SREERAMA, DIRECTOR OF PUBLIC WORKS AND ENGINEERING, AND THE CITY OF HOUSTON, Appellees

―――――――――――――――――――――――

On Appeal from the 11th District Court
Harris County, Texas
Trial Court Case No. 2015-34786

―――――――――――――――――――――――

## O P I N I O N

This is a suit contesting a City of Houston drainage fee ordinance.

Appellant, Elizabeth C. Perez, appeals the trial court's December 9, 2016

order granting the plea to the jurisdiction filed by Appellees—Mayor Sylvester

Turner, the Director of Public Works and Engineering Karun Sreerama, and the City of Houston (collectively, "the City")—and dismissing all of Perez's claims.[1] Perez seeks a judgment declaring the drainage fee ordinance invalid; an injunction against the assessment, collection, and expenditure of taxes and fees pursuant to the ordinance; and reimbursement, "on behalf of herself and all other similarly situated persons or entities," of taxes and fees assessed and collected pursuant to the ordinance and paid "under duress."

In four points of error, Perez argues that (1) she has standing to assert a legal claim for reimbursement for wrongfully-collected drainage charges that she paid under duress under the purportedly invalid city ordinance; (2) the named individual defendants—the Mayor and the Director of Public Works and Engineering—do not have governmental immunity from her claims based on their enforcement of the invalid city ordinance, and, therefore, the trial court has subject-matter jurisdiction over her claims for declaratory and injunctive relief against these defendants; (3) the City's governmental immunity to her declaratory and injunctive relief claims was waived by the statutory requirement that the City be joined as a necessary party to her claims asserting the unconstitutionality and/or the illegality of specific city ordinances conferring the authority to assess, collect and expend drainage charges

[1]    Perez originally named Annise Parker and Dale A. Rudick in their official capacities as defendants. However, both Parker and Rudick have since been replaced in office.

2

for street improvements; and (4) the trial court wrongly dismissed her constitutional claims on the ground that they were not ripe. We affirm in part and reverse and remand in part.

## Background

### A. The Charter Amendment

Houston is a home rule city governed by a city charter. In 2010, a citizen-initiated petition sought to amend the charter to address the need for drainage and street improvements through Proposition One, which would change the method of financing such projects from bond debt to "Pay-As-You-Go." The amendment proposed a Dedicated Drainage and Street Renewal (DDSR) Fund that would be funded from various sources including a fixed percentage of *ad valorem* tax revenue shifted from debt service to the DDSR Fund, federal grants, and drainage fee and developer impact fee revenue. Because the percentage of *ad valorem* tax revenue shifted to the DDSR Fund and the drainage and developer fees added by the charter amendment could affect Houston's revenue caps,[2] the amendment provided that "funding for the [DDSR Fund] that is not derived from *ad valorem* taxes levied by

---

[2] A revenue cap was added to the city charter in 2004 that requires voter approval for increases in *ad valorem* taxes above a certain level, as determined year-by-year based on a formula set out in the charter.

the City (i.e., that portion derived from fees, charges and third party payments) shall not be included in those *ad valorem* tax revenues limited by this Charter."

Specifically, on November 2, 2010, the City of Houston voters voted on and approved "PROPOSITION I—CHARTER AMENDMENT PROPOSITION Relating to the Creation of a Dedicated Funding Source to Enhance, Improve and Renew Drainage Systems and Streets." The body of Proposition I stated, in its entirety, "Shall the City Charter of the City of Houston be amended to provide for the enhancement, improvement and ongoing renewal of Houston's drainage and streets by creating a Dedicated Pay-As-You-Go Fund for Drainage and Streets?"

Perez and two other registered voters filed an election contest in December 2010 to challenge the legality of Proposition I, asserting that the Proposition's language was defective and illegally deceptive. This case proceeded through the trial court, which granted summary judgment in favor of the City and the Mayor, and the appellate court, which affirmed the trial court's judgment (*Dacus I*), to the Texas Supreme Court, which reversed the judgment of the appellate court and ruled in favor of Perez and her co-parties. *Dacus v. Parker*, 466 S.W.3d 820 (Tex. 2015) (*Dacus II*). The supreme court held that because Proposition I failed to mention that drainage charges would be imposed on most real property owners, and therefore omitted a chief feature of the measure, the measure was not submitted "with such definiteness and certainty that voters would not be misled." *Id.* at 829. The court

4

remanded the case to the trial court "for further proceedings consistent with [its] opinion." *Id.*

On remand from *Dacus II*, the trial court granted summary judgment in favor of Perez and her co-plaintiffs. It held that the November 2, 2010 election on Proposition I, amending the City's charter, was void. The Fourteenth Court of Appeals affirmed, and the Texas Supreme Court denied the City's subsequent petition for review. *City of Houston v. Dacus*, No. 14-16-00123-CV, 2017 WL 536647, at *2, 5 (Tex. App.—Houston [14th Dist.] Feb. 9, 2017, pet. denied) (mem. op.) (*Dacus III*).

## B.    *The Drainage Fee Ordinance*

In April 2011, after the *Dacus* case was filed, and while it was still pending, the City passed an ordinance under Local Government Code Chapter 552, the "Municipal Drainage Utility Systems Act," creating a drainage utility and allowing that utility to assess, collect, and spend drainage fees (the Drainage Fee Ordinance). The Drainage Fee Ordinance defines "drainage" as including streets, curbs, and other manmade or natural "conduits . . . that are used to draw off surface water from land, carry the water away, collect, store, or treat the water, or divert the water into natural or artificial watercourses or into which the surface water flows." The Ordinance identifies the authority to collect drainage fees as arising from both Chapter 552 and the City's home rule authority.

5

The City subsequently collected drainage fees from Perez and others. For example, Perez presented evidence that she paid a monthly drainage fee of $11.38 on her current residence.

Following the Texas Supreme Court ruling in *Dacus II* and while remand was pending in that suit, on June 17, 2015, Perez initiated the instant class-action lawsuit[3] against the City and City officers charged with implementing the Drainage Fee Ordinance, challenging the legality of the Ordinance and seeking declaratory and injunctive relief and reimbursement of taxes paid pursuant to it. Perez alleged that the City and the individual defendants "unconstitutionally and illegally assessed, collected and expended hundreds of millions of dollars from 2011 to 2105 purportedly for drainage and street improvements and repairs . . . from . . . Houston taxpayers and landowners pursuant to a void Charter Amendment," Proposition I, and "a void City Ordinance," the Drainage Fee Ordinance.

In her petition, she sought a judicial declaration that the drainage tax imposed by the Drainage Fee Ordinance is "illegal and/or unconstitutional" and that "all assessed amounts must be reimbursed to those persons and entities that paid them."

---

[3]     Perez pled her suit as a class-action lawsuit but no class certification ever occurred. Perez argues in her brief on appeal that the drainage fees have been used illegally because they have been used not only for drainage projects but for "projects clearly unrelated to drainage systems such as traffic signal reconstruction, bridge replacement, street intersection improvements, concrete panel replacement, and asphalt overlays, among others." The issue before us, however, is whether the trial court had jurisdiction over Perez's claims, not the merits of her claims.

In this Court, Perez now states that she no longer seeks reimbursement for past payments for taxes, only the monthly drainage fee charged to her residence. She also sought an injunction against the expenditure of all amounts assessed but not yet spent and against further assessments, with any money collected to be paid into the registry of the Court.

Perez claimed, "Simply put, the [Drainage Fee Ordinance] is void, and has always been void." Perez claimed that she has standing to bring claims against the City and the "*ultra vires* defendants" because she "is a municipal taxpayer who paid, and continues to pay, the [i]llegal [drainage] [t]ax under duress." She alleged that the drainage fee tax has been illegally assessed and collected "pursuant to a void Charter Amendment and/or to a void City Ordinance" and that the current mayor, Sylvester Turner, has announced his intention to continue to assess and collect the drainage tax. She also sought declaratory and injunctive relief to stop the City and individual defendants from passing future budgets or future spending of public monies which "exceed the caps of the Revenue Cap and/or the Spending Cap contained in the Houston City Charter," as, she alleged, the City had been doing under "the now Void Charter Amendment." She claimed standing as a resident, municipal taxpayer, and registered voter who has paid the drainage tax "under duress."

Finally, Perez contended, citing *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009), that no governmental immunity exists for a claim brought under the *ultra vires* exception to sovereign or governmental immunity for claims like those she is alleging against the individual defendants for "prospective injunctive and/or declaratory relief to restrain the official from violating statutory or constitutional provisions." Perez also contended that "the Texas Declaratory Judgments Act contains a waiver of immunity from suit for prospective equitable remedies in official-capacity suits against government actors who have violated statutory and constitutional provisions by acting without legal authority," even if the judgment contains a declaration that state officials must comply with the law and enforcement of the law "compels the payment of money."

On December 9, 2016, the trial court dismissed Perez's lawsuit for want of subject-matter jurisdiction. The trial court found that Perez's "purported constitutional claims" were not ripe for adjudication, that Perez had "no standing to challenge the validity, legality, and/or constitutionality of the assessment and/or collection of City of Houston drainage fees, the November 2010 Pay-As-You-Go charter amendment [Proposition I], and/or the April 2011 [D]rainage [Fee] [O]rdinance because she has suffered no particularized injury as a matter of law," that she had "no standing to seek money damages and/or a refund as a taxpayer as a matter of law," and that governmental immunity also barred her refund claim.

The trial court further found that:

- Perez "has not pleaded and cannot plead any *ultra vires* act with regard to the mere enforcement or implementation" by any city official of any charter amendment, ordinance, or other law "currently in effect";

- her purported *ultra vires* claim against the City was barred by governmental immunity "because no municipality, including the City of Houston, is a proper party to any *ultra vires* claim as a matter of law";

- her *ultra vires* claims against the individual defendants were likewise barred by governmental immunity because she had raised no fact issue that any of them "had the legal authority to or did commit any *ultra vires* act alleged";

- she lacked standing to assert any claim that the City's drainage fee or its implementation "violates any effective City of Houston revenue 'caps'"; and

- she lacked standing "to seek an audit or certification pursuant to Art.VI, § 7 because said provision has never gone into effect."

Accordingly, the trial court found that Perez was not entitled to any award of attorney's fees. The court granted the City's pleas to the jurisdiction and dismissed all of Perez's claims for lack of jurisdiction, observing that she had "failed to replead any viable claim after this court's having given her sufficient opportunity and time in which to do so."

Perez appealed.

9

**Subject-Matter Jurisdiction**

*A.    Standard of Review of Subject-Matter Jurisdiction*

Both ripeness and standing are components of subject-matter jurisdiction. *McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 231 (Tex. 2001).

The ripeness doctrine prohibits suits involving "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001). An issue is ripe for decision when at the time a lawsuit is filed the facts are sufficiently developed "so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000).

The standing doctrine prohibits suits by those who are not personally aggrieved. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). A party's standing is never presumed, cannot be waived, and can be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993).  "For a plaintiff to have standing, a controversy must exist between the parties at every stage of the legal proceedings, including the appeal." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). If the issues are no longer live or the parties lack a legally cognizable interest in the outcome, the case becomes moot. *Id.*; *see O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S. Ct. 669, 676 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding

injunctive relief . . . if unaccompanied by any continuing present adverse effects."). Like ripeness, "[s]tanding is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). We review standing under the same standard by which we review subject-matter jurisdiction generally. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

Like ripeness and standing, mootness is also relevant to a trial court's subject-matter jurisdiction to consider a case. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 865 (Tex. 2010). A controversy must exist between the parties at every stage of the legal proceedings, including the appeal. *Bd. of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002). "If a controversy ceases to exist—'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'—the case becomes moot." *Williams*, 52 S.W.3d at 184 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 1183 (1982)). A case is moot when a judgment cannot have a practical effect on an existing controversy. *Reule v. RLZ Invs.*, 411 S.W.3d 31, 32 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see Meeker v. Tarrant Cty. Coll. Dist.*, 317 S.W.3d 754, 759 (Tex. App.—Fort Worth 2010, pet. denied). When a case becomes moot on appeal, we set aside the judgment and dismiss the case. *See Marshall v. Hous. Auth. of San Antonio*, 198 S.W.3d 782, 785 (Tex. 2006); *Reule*, 411 S.W.3d at 32; *Meeker*, 317 S.W.3d at 759, 763.

11

The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, among other procedural vehicles. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

**B.** *Impact of* **Dacus** *on Perez's Claims in this Suit*

As a preliminary matter, we address the portions of Perez's pleadings and complaints on appeal in which she asserts complaints related to the Charter Amendment, including her claim that the Drainage Fee Ordinance has already been determined to be invalid because of the litigation surrounding the Charter Amendment.

In *Dacus II*, the Texas Supreme Court declared that Proposition I, providing for the creation of the Pay-As-You-Go Fund (the DDSR Fund) was not submitted to the voters in November 2010 "with such definiteness and certainty that voters would not be misled." 466 S.W.3d at 829. On remand for further proceedings, the Fourteenth Court of Appeals, in *Dacus III*, affirmed the judgment of the trial court holding that the election on Proposition I, amending the City charter to provide for the DDSR Fund, was void, and it ordered the City to hold a new election on the measure. 2017 WL 536647, at *2, 5. The supreme court denied the City's petition

12

for review of the Fourteenth Court of Appeals' decision in *Dacus III*, finally resolving the controversy regarding the validity of the Charter Amendment.

In this suit, Perez challenges the legality of the DDSR Fund established in December 2011 pursuant to Proposition I. Perez filed this suit after the supreme court held, in *Dacus II*, that the language of Proposition I was too uncertain to enable voters to make an informed choice on the Proposition, but before the Fourteenth Court of Appeals held, in *Dacus III*, that the election was void and ordered a new one. Because of the Fourteenth Court of Appeals' decision in *Dacus III*, which became final after Perez filed this suit and while this appeal was pending, issues relating to the Charter Amendment have been resolved by the judgment declaring the Charter Amendment void and ordering a new election on the measure. Any further complaints regarding the Charter Amendment are moot. *See Reule*, 411 S.W.3d at 32; *Meeker*, 317 S.W.3d at 759.

Perez also alleged that the City and other individual defendants exceeded their authority granted pursuant to a void Charter Amendment. However, the controversy regarding the validity of the Charter Amendment was not yet resolved at the time Perez filed her petition. Any claims that the City or City officials acted improperly in failing to recognize the invalidity of the Charter Amendment before its invalidity was judicially determined were premature at the time Perez filed this suit. *See Perry*, 66 S.W.3d at 250; *Gibson*, 22 S.W.3d at 851–52 (holding that issue is ripe for

13

decision when "*at the time a lawsuit is filed*, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote'") (emphasis in original) (quoting *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)).

Although the *Dacus* line of cases addressed the Charter Amendment, it did not address the Drainage Fee Ordinance. Nothing in the *Dacus* cases invalidated or called into question the City's authority to pass the Drainage Fee Ordinance pursuant to its constitutional home-rule authority or Local Government Code Chapter 552. Thus, to the extent that Perez's claims are based on her allegations that the *Dacus* cases have already invalidated the Drainage Fee Ordinance and that, as a result, the City or individual defendants have acted improperly in enforcing the Ordinance, her claims are misplaced and premature. *See Perry*, 66 S.W.3d at 250; *Gibson*, 22 S.W.3d at 851–52. The merits of the Drainage Fee Ordinance must be addressed and determined before any plaintiff may be heard to complain that the City is enforcing an illegal and invalid ordinance, and that had not yet happened when Perez filed the underlying suit and has not been determined by the supreme court's decision in *Dacus*.

We conclude that the trial court lacked subject-matter jurisdiction over any claims dependent on the Charter Amendment's having been declared void, and, thus, it properly dismissed those claims based on the City's plea to the jurisdiction.

Perez also argues, however, that the Drainage Fee Ordinance itself is illegal and invalid in its own right. Perez challenges the validity of the Drainage Fee Ordinance based in part on her assertion that the judgment voiding the Charter Amendment likewise invalidated the Drainage Fee Ordinance. The City contests this assertion. The City asserted in the trial court below and asserts on appeal from the order dismissing Perez's claims that the Drainage Fee Ordinance was passed pursuant to the City's authority as a home-rule city governed by a city charter and pursuant to authority granted by Local Government Code Chapter 552. The City argues in its brief on appeal that the Charter Amendment was unnecessary to impose a drainage fee but was proposed because it "shifts a portion of *ad valorem* tax revenue from debt service to the DDSR Fund and possibly affects Houston's revenue caps, [and thus] Houston's charter was best served by an amendment and election." Nevertheless, the City asserted both in the trial court and on appeal that it had authority—independent of the Charter Amendment—to pass and enforce the Drainage Fee Ordinance.

The Texas Constitution provides for home-rule authority. *See* TEX. CONST. art. XI, § 5; *see also* TEX. LOC. GOV'T CODE ANN. §§ 9.001–.008 (West 2008) (addressing adoption of charters for home-rule municipalities). A home-rule city derives its power from the Texas Constitution, operates by its city's charter, and "possess[es] the full power of self government and look[s] to the Legislature not for

15

grants of power, but only for limitations on their power." *See Town of Lakewood Vill. v. Bizios*, 493 S.W.3d 527, 531 (Tex. 2016).

Furthermore, Local Government Code Chapter 552, also known as the Municipal Drainage Utility Systems Act, sets out procedures for municipalities to address concerns regarding drainage. *See* TEX. LOC. GOV'T CODE ANN. §§ 552.041–.054 (West 2015 & Supp. 2017) (setting out procedures for municipalities to create drainage utility that can address drainage concerns). The Drainage Fee Ordinance itself states:

> [T]his Ordinance has been prepared for consideration by City Council in conformance with Subchapter C of Chapter 552 of the Texas Local Government Code and the City's Home-Rule powers under Article XI, Section 5 of the Texas Constitution to create a City of Houston Municipal Drainage Utility System to accomplish the objective and directives of Section 22, Article IX of the City Charter with regard to streets and drainage[.]

We conclude that Perez's claims based on the validity of the Drainage Fee Ordinance in its own right are ripe for determination. We therefore turn to Perez's standing to bring these claims.

## C. *Perez's Standing*

In her first issue on appeal, Perez argues that she has standing to assert a legal claim for reimbursement of all drainage charges made under the Drainage Fee Ordinance because, as a municipal taxpayer who paid, and continues to pay under

16

duress, an illegal drainage tax assessed by the City, she can demonstrate both that she has suffered a particularized injury and that she has standing to sue as a taxpayer.

### 1. *Perez failed to demonstrate a particularized injury*

Perez argues that she "owned two separate real properties which were assessed on a monthly basis for drainage charges." As evidence, Perez provided her water bills with a line item for drainage charges and also including assessment of additional late payment fees. Perez argues that these payments demonstrate a particularized injury, thereby giving her standing to seek reimbursement of the paid drainage fees. She argues in her appellate brief, "Indeed, no one but Perez was charged with this illegal drainage fee for these two specific pieces of real estate, and no one was forced to pay an illegal fee under duress for these two specific parcels of land except for [Perez]." The trial court found, however, that she suffered no particularized injury and thus had "no standing to challenge the validity, legality, and/or constitutionality of the assessment and/or collection of City of Houston drainage fees."

"In general, taxpayers do not have a right to bring suit to contest government decision-making because . . . governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review." *Bland Ind. Sch. Dist.*, 34 S.W.3d at 555. Thus, unless standing to sue the government is

17

conferred by statute, "taxpayers must show as a rule that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action or assert a general right." *Id*. at 555–56.

We begin our analysis by recognizing that although Perez has pled that she paid "illegal" drainage fees, she has cited to no authority declaring illegal the Drainage Fee Ordinance pursuant to which the fees were assessed and collected. Perez herself seeks such a declaration in the underlying suit, but she does not cite to, nor could we find, any authority declaring the Drainage Fee Ordinance invalid or void. Perez makes multiple references to the *Dacus* case; however, as discussed above, that case addressed only the validity of the ballot language for the Proposition I Charter Amendment and did not address the validity of the Drainage Fee Ordinance. *See, e.g.*, *Dacus III*, 2017 WL 536647, at *2. Thus, Perez misconstrues the facts of this case when she asserts that she was forced to pay "illegal" fees.

Accordingly, Perez cannot rely on the line of cases she cites in her brief on appeal, which provide for, as she characterizes it, "reimbursement of illegal fees and taxes . . . when the public entity compels compliance with a void law and subjects a person to punishment if he refuses or fails to comply." *See, e.g.*, *State v. Akin Prods. Co.*, 286 S.W.2d 110, 110-12 (Tex. 1956) (holding, where supreme court had previously held tax on citrus industry unconstitutional in its entirety and plaintiffs/taxpayers had obtained permission to sue State for recovery of funds

18

collected under that unconstitutional act, that taxes paid under duress were recoverable). These cases do not apply to a situation, like the one here, where the underlying law—here, the Drainage Fee Ordinance—has not yet been declared invalid.

To establish that she suffered a particularized injury that conferred standing upon her, Perez had to demonstrate she "suffered a particularized injury distinct from that suffered by the general public" by the drainage fees collected pursuant to the Drainage Fee Ordinance. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 555–56. Perez argues that she suffered a unique injury distinct from that suffered by the general public because she is the only person who was required to pay the drainage fees associated with her unique pieces of property. However, this is insufficient to demonstrate a unique injury. The municipal fees were assessed to property owners across the City. The payment of municipal fees, like the drainage fees assessed against Perez's properties here and numerous other properties in the City, does not constitute a particularized injury sufficient to confer standing to sue for recovery of the fees. *See id.*

We overrule this part of Perez's first issue.

2.      *Perez's standing as a taxpayer*

Perez also argues that she has demonstrated her standing as a taxpayer.

19

There is a long-established exception to the general rule that a particularized injury is required for taxpayer standing: "a taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury." *See id.* However, under this exception, "[a] taxpayer may maintain an action solely to challenge *proposed* illegal expenditures; a taxpayer may *not* sue to recover funds previously expended." *Williams*, 52 S.W.3d at 179 (emphasis added). The courts have long maintained this broader grant of taxpayer standing to enjoin future public spending without permitting the taxpayer to recover funds previously expended, stating,

> When a taxpayer brings an action to restrain the illegal expenditure . . . of tax money he sues for himself and it is held that his interest in the subject matter is sufficient to support the action; but when the money has already been spent, an action for its recovery is for the [taxing entity]. The cause of action belongs to it alone.

*Bland Indep. Sch. Dist.*, 34 S.W.3d at 556 (quoting *Hoffman v. Davis*, 100 S.W.2d 94, 96 (1937)). The courts reason that the exception to the particularized injury requirement for taxpayer lawsuits to enjoin future public expenditures, while restricting the recovery of monies already spent to the taxing entity alone, "unquestionably impinges on the policies of restricting taxpayer lawsuits, but, strictly limited, it provides important protection to the public from the illegal expenditure of public funds without hampering too severely the workings of the government." *Id.*

20

Implicit in the rule that Texas taxpayers have standing to enjoin the future illegal expenditure of public funds without showing a particularized injury are two requirements: "(1) that the plaintiff is a taxpayer; and (2) that public funds are expended on the allegedly illegal activity." *Williams*, 52 S.W.3d at 179. Thus, "[t]o be entitled to municipal taxpayer standing a litigant must prove that the government is actually expending money on the activity that the taxpayer challenges; merely demonstrating that tax dollars are spent on something related to the allegedly illegal conduct is not enough." *Id.* at 181.

Perez argues that she has standing to bring claims against the City as a municipal taxpayer, arguing that she pays both the allegedly illegal drainage fees and *ad valorem* taxes. She argues that the City "is going to spend tax dollars illegally because each year the Houston City Council passes an annual fiscal budget which spends hundreds of millions of dollars of assessed and collected drainage charges on projects not permitted under law" and in violation of the revenue cap on ad valorem taxes. Thus, Perez sought, in part, an injunction against future assessments and expenditures of drainage fees.

The City argues that Perez's payment of her water bill, which includes the drainage fees, does not qualify her as a taxpayer and that, although Perez alleged that she paid ad valorem taxes, she did not present any evidence that she has paid

such taxes. The City relies on *Williams v. Lara* to support its argument on this ground.

In *Williams*, the Texas Supreme Court held that payment of sales tax does not confer taxpayer standing. 52 S.W.3d at 179–80. It reasoned:

> Taxpayer standing is a judicially created exception to the general standing rule. We have already limited the applicability of this exception by narrowly defining the type of action a taxpayer can maintain. . . . Extending taxpayer standing to those who pay only sales tax would mean that even a person who makes incidental purchases while temporarily in the state could maintain an action. This would eviscerate any limitation on taxpayer suits. It would allow a person with virtually no personal stake in how public funds are expended to come into court and bring the government's actions under judicial review. This is not what this Court envisioned in crafting the taxpayer-standing exception. Accordingly, we hold, for prudential reasons, that paying sales tax does not confer taxpayer standing upon a party.

*Id.* at 180 (internal citations omitted).

Perez's situation is clearly distinguishable from the plaintiff in *Williams*. Perez alleged, and presented some evidence in support of her allegations, that she owns property in the City and pays drainage fees assessed on that property.[4] Thus,

---

[4] The parties do not address in any substantive way the question of whether the drainage fees here may properly be treated as taxes rather than fees—Perez repeatedly refers to it as a "tax" while the City calls it a "fee." However, we note that the City's decision whether to label a charge a "fee" rather than a "tax" is not binding on this Court's analysis. *See TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'n*, 397 S.W.3d 173, 175 n.3 (Tex. 2013). "A charge is a fee rather than a tax when the primary purpose of the fee is to support a regulatory regime governing those who pay the fee." *Id.* It does not appear that the drainage fees here supported a regulatory regime. Rather, the purpose of the drainage fee was to generate revenue to fund drainage improvements throughout the City, and, thus, we conclude that Perez's payment of the drainage fees was sufficient to confer upon

she did more than "make[]incidental purchases while temporarily in the state." *See id.* Rather, her payment of the drainage fees associated with her property demonstrates that she maintains a personal stake in how the City's drainage funds are collected and expended. We conclude that Perez has established the first requirement for taxpayer standing, i.e., that she is a taxpayer. *See id.* at 179 (implicit in taxpayer standing exception from general rule requiring particularized injury are two requirements: (1) that the plaintiff is a taxpayer, and (2) that public funds are expended on allegedly illegal activity).

The City also argues that Perez has failed to prove that the City is actually expending money illegally. Again, the City cites *Williams*, which stated, "To be entitled to municipal taxpayer standing, a litigant must prove that the government is actually expending money on the activity that the taxpayer challenges; merely demonstrating that tax dollars are spent on something related to the allegedly illegal conduct is not enough." *Id.* at 181. Perez's live petition alleged, in part, that the City was illegally assessing, collecting, and expending funds for drainage and street improvements pursuant to the allegedly void Ordinance. The jurisdictional evidence indicates that the City passed the complained-of Ordinance and that it has implemented it. This is sufficient to demonstrate for jurisdictional purposes that the

her standing to challenge the assessment and expenditure of those funds, as set out above.

23

City is actually assessing and expending money based on the complained-of Ordinance. *See id.*; *see also Bland Indep. Sch. Dist.*, 34 S.W.3d at 554 (although court can and should consider evidence to extent necessary to resolve jurisdictional claim, plea to jurisdiction "does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction").

Accordingly, we conclude that Perez has established taxpayer standing here. *See Williams*, 52 S.W.3d at 179. However, Perez's standing as a taxpayer is limited to maintaining "an action solely to challenge *proposed* illegal expenditures; a taxpayer may *not* sue to recover funds previously expended." *See id.* (emphasis added). Perez has standing to seek a declaration that the Drainage Fee Ordinance is illegal and to seek to enjoin the prospective assessment, collection, and expenditure of drainage fees based on a declaration that the Ordinance is in fact illegal, assuming that all other criteria for subject-matter jurisdiction are met—including the City's and the individually named defendants' lack of governmental immunity to her suit. However, Perez lacks standing to assert her claims for reimbursement for any taxes already assessed, collected, or paid pursuant to the Drainage Fee Ordinance. *See id.*; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 556; *Hoffman*, 100 S.W.2d at 96.

We sustain Perez's first issue in part.

24

**D.**     ***The City's and the 'Ultra Vires' Defendants' Immunity to Perez's Suit***

In her second issue, Perez argues that she properly asserted ultra-vires claims for declaratory and injunctive relief. And, in her third issue, Perez asserts that the City's immunity was waived by the statutory requirement that the City be joined as a necessary party to her claims asserting the unconstitutionality and/or illegality of specific city ordinances. We address these issues together.

The Legislature has mandated that municipalities be made parties to declaratory judgment actions that challenge the validity of municipal ordinances. TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (West 2015). "For claims challenging the validity of ordinances or statutes . . . the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity." *Texas Lottery Com'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–34 (Tex. 2010) (quoting *Heinrich*, 284 S.W.3d at 373 n.6) (citing section 37.002(b)). Generally, however, suits against *state officers* in the exercise of their discretion are barred by governmental immunity. *Houston Belt & Terminal Railway Co. v. City of Houston*, 487 S.W.3d 154, 163 (Tex. 2016). Nevertheless, when a state officer acts beyond his legally granted discretion, i.e., without legal authority, his acts are not protected. *Id.* Thus, "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity." *Heinrich*, 284 S.W.3d at 372.

25

"[T]he rule that *ultra vires* suits are not 'suits against the State within the rule of immunity of the State from suit' derives from the premise that the 'acts of officials which are not lawfully authorized are not acts of the State.'" *Id.* at 373 (quoting *Cobb v. Harrington*, 190 S.W.2d 709, 712 (1945)). Because these acts are not acts of the State, "it follows that these suits cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity[,] . . . even though the suit is, for all practical purposes, against the state." *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471—72, 105 S. Ct. 873, 878 (1985)).

To fall within the *ultra vires* exception to state actors' governmental immunity, "a suit must . . . allege, and ultimately prove, that [a state] officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372; *Turner v. Robinson*, 534 S.W.3d 115, 126 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). A state officer acts without legal authority if he "exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Turner*, 534 S.W.3d at 126. But the *ultra vires* rule is subject to important qualifications. *Heinrich*, 284 S.W.3d at 373. Under the *ultra vires* exception, suits against public officials to enjoin *prospective* illegal activity, as measured from the date of the injunction, are not barred by governmental immunity. *Id.* at 376; *see Edelman v. Jordan*, 415 U.S. 651, 669, 94 S. Ct. 1347, 1358 (1974) (using entry of injunction to distinguish retrospective from prospective relief). But *retrospective* monetary claims against

state officers are barred by governmental immunity. *Heinrich*, 284 S.W.3d at 374. "As *Heinrich* made clear, immunity for an *ultra vires* act is only a waiver with regard to bringing *future* acts into compliance with the law," not with regard to permitting suits to recover monies already assessed, collected, or spent. *Turner*, 534 S.W.3d at 126 (quoting *City of Galveston v. CDM Smith, Inc.*, 470 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2015, pet denied) (emphasis added)). The declaratory judgments act may not be used to circumvent immunity. *Heinrich*, 284 S.W.3d at 374.

Here, Perez contends that the Drainage Fee Ordinance, creating a drainage utility and allowing that utility to assess and collect drainage fees pursuant the City's home-rule authority and the provisions of Local Government Code Chapter 552, is illegal because it was created pursuant to a void charter amendment. And she seeks to enjoin the collection of fees pursuant to that Ordinance and to recover damages for herself "and all other persons and entities similarly situated" in the form of reimbursement of all fees collected by the City pursuant to the Drainage Fee Ordinance.

We hold, first, that Perez has standing to sue the City and the *ultra vires* defendants to determine the legality of the Drainage Fee Ordinance and so to determine whether the City officers charged with assessing and collecting taxes and spending public monies as authorized by the Ordinance are acting without legal

27

authority, and thus *ultra vires*, in assessing and collecting fees and spending public money under the Ordinance and whether those activities may therefore be enjoined. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b); *Tex. Lottery Comm'n*, 325 S.W.3d at 633; *Heinrich*, 284 S.W.3d at 373 n.6; *see also Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 164 (stating that primary objective in construing ordinance is to ascertain and give effect to enacting body's intent). Just as she has standing to seek to enjoin future expenditures, Perez has standing to sue the individual defendants charged with carrying out the provisions of the allegedly illegal Ordinance. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 556 ("[A] taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury."). This is so because the individual defendants do not have governmental immunity for their future acts to enforce the Ordinance—to the extent it is determined to be invalid—in their official capacities. *Heinrich*, 284 S.W.3d at 373. However Perez may maintain this taxpayer action solely to seek to enjoin *proposed future* illegal expenditures as measured from the date of any injunction she might obtain, not to recover funds previously expended. *See Williams*, 52 S.W.3d at 179; *Heinrich*, 284 S.W.3d at 376; *Bland*, 34 S.W.3d at 556; *Hoffman*, 100 S.W.2d at 96.

Accordingly, we sustain Perez's second and third issues insofar as they assert her standing to seek a declaration that the Drainage Fee Ordinance is illegal, and,

therefore, that the continued assessment, collection, and expenditure of fees under the Drainage Fee Ordinance is illegal. And we sustain those issues insofar as she alleges that the individual *ultra vires* defendants do not have governmental immunity to her suit for an injunction against the prospective assessment, collection, and expenditure of taxes in the event the Ordinance is declared invalid and only from the date an injunction issues. We otherwise overrule Perez's second and third issues.

## E.    *Ripeness of Constitutional Claims*

In her fourth issue, Perez challenges the trial court's determination that her constitutional claims are not ripe.

As stated above, the ripeness doctrine prohibits suits involving "uncertain or contingent future events." *Perry*, 66 S.W.3d at 250. An issue is ripe for adjudication and decision when at the time a lawsuit is filed the facts are sufficiently developed "so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Waco Indep. Sch. Dist.*, 22 S.W.3d at 851–522. However, for Perez to have standing, the live controversy must continue to exist between herself and the defendants "at every stage of the legal proceedings, including the appeal." *Williams*, 52 S.W.3d at 184.

We conclude, on the basis of the foregoing facts and authorities, that the issues whether the Drainage Fee Ordinance is illegal and, hence, whether the assessment and collection of fees under the Ordinance is illegal and should be enjoined are ripe.

The City has relied on its authority pursuant to the Texas Constitution's home-rule authority provision and Local Government Code Chapter 552 to collect the fees pursuant to the Drainage Fee Ordinance and has collected and expended fees on the basis, and Perez has claimed that she has been injured by the City's collection of fees pursuant to that Ordinance. Thus, the issues are sufficiently developed so that Perez's claim seeking a declaration that the Ordinance is invalid and an injunction against the City's future collection or expenditure of funds pursuant to that Ordinance is ripe for adjudication.

Accordingly, we sustain Perez's fourth issue contending that the controversy between herself and the City is ripe for decision.

## Conclusion

We affirm the trial court's dismissal of Perez's claim for reimbursement of drainage and street improvement fees for lack of subject-matter jurisdiction. We further affirm the dismissal her claims against the City on grounds of governmental immunity insofar as the claims seek an injunction against the assessment, collection, and expenditure of taxes pursuant to the Drainage Fee Ordinance prior to any determination that the Ordinance is in fact invalid. We reverse the dismissal as it relates to Perez's claim that the Drainage Fee Ordinance is invalid and her claim seeking to enjoin any future collection or expenditure of fees pursuant to that Ordinance, and we remand for further proceedings consistent with this opinion.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Brown, and Lloyd.

31