**Opinion issued October 17, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00985-CV

_____

### ELIZABETH C. PEREZ, Appellant

### V.

### SYLVESTER TURNER, MAYOR, KARUN SREERAMA, DIRECTOR OF PUBLIC WORKS AND ENGINEERING, AND THE CITY OF HOUSTON, Appellees

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Case No. 2015-34786**

---

## OPINION ON REHEARING

This is a suit contesting a City of Houston drainage fee ordinance. Appellees—Mayor Sylvester Turner, the Director of Public Works and Engineering Karun Sreerama, and the City of Houston (collectively, "the City")—

moved for rehearing of the case. We granted the motion. We now withdraw our opinion and judgment issued on August 30, 2018, and issue the following opinion and judgment in their place.[1]

Appellant, Elizabeth C. Perez, appeals the trial court's December 9, 2016 order granting the plea to the jurisdiction filed by the City and dismissing all of her claims.[2] Perez seeks a judgment declaring the drainage fee ordinance invalid; an injunction against the assessment, collection, and expenditure of taxes and fees pursuant to the ordinance; and reimbursement, "on behalf of herself and all other similarly situated persons or entities," of taxes and fees assessed and collected pursuant to the ordinance and paid "under duress."

In four points of error, Perez argues that (1) she has standing to assert a legal claim for reimbursement for wrongfully-collected drainage charges that she paid under duress pursuant to the purportedly invalid city ordinance; (2) the named individual defendants—the Mayor and the Director of Public Works and Engineering—do not have governmental immunity from her claims based on their enforcement of the purportedly invalid city ordinance, and, therefore, the trial court

---

[1] We dismiss as moot the motion for rehearing filed by Perez on November 27, 2018, and we likewise dismiss as moot the City's motion for en banc reconsideration of the August 30, 2018 opinion and judgment. *See* TEX. R. APP. P. 49.2, 49.3; *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 33 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (op. on reh'g).

[2] Perez originally named Annise Parker and Dale A. Rudick in their official capacities as defendants. However, both Parker and Rudick have since been replaced in office.

2

has subject-matter jurisdiction over her claims for declaratory and injunctive relief against these defendants; (3) the City's governmental immunity from her declaratory and injunctive relief claims was waived by the statutory requirement that the City be joined as a necessary party to her claims asserting the unconstitutionality and/or the illegality of specific city ordinances conferring the authority to assess, collect and expend drainage charges for street improvements; and (4) the trial court wrongly dismissed her constitutional claims on the ground that they were not ripe. We affirm.

**Background**

*A.     The Charter Amendment*

Houston is a home rule city governed by a city charter. In 2010, a citizen-initiated petition sought to amend the charter to address the need for drainage and street improvements through Proposition One, which would change the method of financing such projects from bond debt to "Pay-As-You-Go." The amendment proposed a Dedicated Drainage and Street Renewal (DDSR) Fund that would be funded from various sources including a fixed percentage of *ad valorem* tax revenue shifted from debt service to the DDSR Fund, federal grants, and drainage fee and developer impact fee revenue. Because the percentage of *ad valorem* tax revenue shifted to the DDSR Fund and the drainage and developer fees added by

3

the charter amendment could affect Houston's revenue caps,[3] the amendment provided that "funding for the [DDSR Fund] that is not derived from *ad valorem* taxes levied by the City (i.e., that portion derived from fees, charges and third party payments) shall not be included in those *ad valorem* tax revenues limited by this Charter."

On November 2, 2010, the City of Houston voters voted on and approved "PROPOSITION I—CHARTER AMENDMENT PROPOSITION Relating to the Creation of a Dedicated Funding Source to Enhance, Improve and Renew Drainage Systems and Streets." The body of Proposition I stated, in its entirety, "Shall the City Charter of the City of Houston be amended to provide for the enhancement, improvement and ongoing renewal of Houston's drainage and streets by creating a Dedicated Pay-As-You-Go Fund for Drainage and Streets?"

Perez and two other registered voters filed an election contest in December 2010 to challenge the legality of Proposition I, asserting that the Proposition's language was defective and illegally deceptive. This case proceeded through the trial court, which granted summary judgment in favor of the City and the Mayor, and the appellate court, which affirmed the trial court's judgment (*Dacus I*), to the Texas Supreme Court, which reversed the judgment of the appellate court and

---

[3] A revenue cap was added to the city charter in 2004 that requires voter approval for increases in *ad valorem* taxes above a certain level, as determined year-by-year based on a formula set out in the charter.

4

ruled in favor of Perez and her co-plaintiffs. *Dacus v. Parker*, 466 S.W.3d 820, 822 (Tex. 2015) (*Dacus II*). The supreme court held that because Proposition I failed to mention that drainage charges would be imposed on most real property owners, and therefore omitted a chief feature of the measure, the measure was not submitted "with such definiteness and certainty that voters would not be misled." *Id.* at 828–29. The court remanded the case to the trial court "for further proceedings consistent with [its] opinion." *Id.* at 829.

On remand from *Dacus II*, the trial court granted summary judgment in favor of Perez and her co-plaintiffs. It held that the November 2, 2010 election on Proposition I, amending the City's charter, was void. The Fourteenth Court of Appeals affirmed, and the Texas Supreme Court denied the City's subsequent petition for review. *City of Houston v. Dacus*, No. 14-16-00123-CV, 2017 WL 536647, at *2, 5 (Tex. App.—Houston [14th Dist.] Feb. 9, 2017, pet. denied) (mem. op.) (*Dacus III*).

**B.** **The Drainage Fee Ordinance**

In April 2011, after the *Dacus* case was filed, and while it was still pending, the City passed an ordinance under Local Government Code Chapter 552, the "Municipal Drainage Utility Systems Act," creating a drainage utility and allowing that utility to assess, collect, and spend drainage fees (the Drainage Fee Ordinance). The Drainage Fee Ordinance defines "drainage" as including streets,

5

curbs, and other manmade or natural "conduits . . . that are used to draw off surface water from land, carry the water away, collect, store, or treat the water, or divert the water into natural or artificial watercourses or into which the surface water flows." The Ordinance identifies the authority to collect drainage fees as arising from both Chapter 552 and the City's home rule authority.

The City subsequently collected drainage fees from Perez and others. For example, Perez presented evidence that she paid a monthly drainage fee of $11.38 on her current residence.

Following the Texas Supreme Court's ruling in *Dacus II*, and while that suit was pending on remand, on June 17, 2015, Perez filed her original petition in this suit[4] against the City and City officers charged with implementing the Drainage Fee Ordinance, challenging the legality of the Ordinance and seeking declaratory and injunctive relief and reimbursement of taxes paid pursuant to it. Perez alleged that the City and the individual defendants "unconstitutionally and illegally assessed, collected and expended hundreds of millions of dollars from 2011 to 2105 purportedly for drainage and street improvements and repairs" from "Houston taxpayers and landowners pursuant to a void Charter Amendment," Proposition I, and "a void City Ordinance," the Drainage Fee Ordinance.

---

[4]     Perez pleaded her suit as a class-action lawsuit but no class certification ever occurred.

Perez claimed, "Simply put, the [Drainage Fee Ordinance] is void, and has always been void." Perez claimed that she has standing to bring claims against the City and the "*ultra vires* defendants" because she "is a municipal taxpayer who paid, and continues to pay, the [i]llegal [drainage] [t]ax under duress." She alleged that the drainage fee has been illegally assessed and collected "pursuant to a void Charter Amendment and/or to a void City Ordinance" and that the current mayor, Sylvester Turner, has announced his intention to continue to assess and collect the drainage fee. She also sought declaratory and injunctive relief to stop the City and individual defendants from passing future budgets or future spending of public monies which "exceed the caps of the Revenue Cap and/or the Spending Cap contained in the Houston City Charter," as, she alleged, the City had been doing under "the now Void Charter Amendment." She claimed standing to sue as a resident, municipal taxpayer, and registered voter who had paid the drainage fee "under duress."

In her original petition, Perez sought a judicial declaration that the drainage fee imposed by the Drainage Fee Ordinance is "illegal and/or unconstitutional" and that "all assessed amounts must be reimbursed to those persons and entities that paid them." She also sought reimbursement for past payment of the monthly drainage fee charged to her residence, and she sought an injunction against the

7

expenditure of all amounts assessed but not yet spent and against further assessments, with any money collected to be paid into the registry of the Court.

The City filed a plea to the jurisdiction or, in the alternative, a motion for summary judgment, asserting, in relevant part, that Perez lacked standing to bring her claims because she had suffered no particularized injury. The City further argued that Perez lacked standing to seek money damages and that governmental immunity barred her claims for a refund of amounts paid. The trial court held a hearing on the plea to the jurisdiction and expressed concerns regarding Perez's standing based on her original pleadings; accordingly, the trial court afforded Perez the opportunity to replead her claims.

Perez filed an amended petition, continuing to assert that "the City and/or the Ultra Vires Defendants had unconstitutionally and illegally assessed, collected and expended hundreds of millions of dollars from 2011 to 2015 purportedly for drainage and street improvements and repairs" pursuant to "a void Charter Amendment . . . and/or pursuant to a void City Ordinance." Perez argues that the drainage fees have been used illegally because they have been used not only for drainage projects but for "projects clearly unrelated to drainage systems such as traffic signal reconstruction, bridge replacement, street intersection improvements, concrete panel replacement, and asphalt overlays, among others." She continued to seek a judgment declaring that the drainage fee is "illegal and/or unconstitutional,

8

that all assessed amounts must be reimbursed to those persons and entities that paid them," that "all assessed but not yet to be spent amounts must not be expended but segregated and protected and paid into the registry" of the trial court, and that "no further [drainage fee] assessments be assessed or collected." Perez also asserted a variety of constitutional claims challenging the City's Charter Amendment and the implementation of the drainage utility, including the assessment and collection of fees, authorized by the Drainage Fee Ordinance.

Specifically relevant to her standing, Perez pleaded the following allegations and facts:

- "Perez has been a named party in [the] related [*Dacus*] litigation which is the sole and exclusive reason why the current lawsuit is now available to reimburse everyone for their pro rata payment of the" drainage fee.

- Because of the supreme court's ruling in *Dacus II*, the trial court on remand in *Dacus* "had no discretion but to enter summary judgment in favor of Perez. Simply put, the Illegal Rain Tax [i.e., the drainage fee] is void, and has always been void."

- Perez has standing "to bring claims against the City of Houston and/or Ultra Vires Defendants because [she] is a municipal taxpayer who paid, and continues to pay, the [drainage fees] under duress" because "the City has been illegally assessing and collecting hundreds of millions of dollars . . . purportedly for drainage and street improvements and repairs . . . pursuant to a void Charter Amendment and/or to a void City Ordinance."

Finally, regarding the Drainage Fee Ordinance, Perez asserted in her amended pleading that "state law provides the City with the authority to impose a

9

drainage charge for drainage costs associated with specific drainage systems," but "state law does not provide the City with the authority to impose a drainage charge for street, curb, and other non-drainage related improvements and repairs." She thus asserted that, because the Charter Amendment was "void," the fees authorized by the Drainage Fee Ordinance are "likewise void" and, "[a]ccordingly, none of the monies collected by the [Drainage Fee Ordinance] were validly collected." And Perez further asserted that the collected monies were "illegally and unconstitutionally exempted from the Revenue Cap," causing City budgets to exceed the caps.

The trial court held another hearing on the City's plea to the jurisdiction, and, ultimately, on December 9, 2016, the trial court dismissed Perez's lawsuit for want of subject-matter jurisdiction. The trial court found that Perez's "purported constitutional claims" were not ripe for adjudication, that Perez had "no standing to challenge the validity, legality, and/or constitutionality of the assessment and/or collection of City of Houston drainage fees, the November 2010 Pay-As-You-Go charter amendment [Proposition I], and/or the April 2011 [D]rainage [Fee] [O]rdinance because she has suffered no particularized injury as a matter of law," that she had "no standing to seek money damages and/or a refund as a taxpayer as a matter of law," and that governmental immunity also barred her refund claim.

10

The trial court found that Perez was not entitled to any award of attorney's fees. The court granted the City's plea to the jurisdiction and dismissed all of Perez's claims for lack of jurisdiction, observing that she had "failed to replead any viable claim after this court's having given her sufficient opportunity and time in which to do so." Perez appealed.

**Subject-Matter Jurisdiction**

A. *Standard of Review of Subject-Matter Jurisdiction*

Both ripeness and standing are components of subject-matter jurisdiction. *McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 231 (Tex. 2001).

The ripeness doctrine prohibits suits involving "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001). An issue is ripe for decision when at the time a lawsuit is filed the facts are sufficiently developed "so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000).

The standing doctrine prohibits suits by those who are not personally aggrieved. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). A party's standing is never presumed, cannot be waived, and can be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993). "For a plaintiff to have standing, a controversy must exist

11

between the parties at every stage of the legal proceedings, including the appeal." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). If the issues are no longer live or the parties lack a legally cognizable interest in the outcome, the case becomes moot. *Id.*; *see O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing present adverse effects."). Like ripeness, "[s]tanding is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). We review standing under the same standard by which we review subject-matter jurisdiction generally. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

Mootness is also relevant to a trial court's subject-matter jurisdiction to consider a case. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 865 (Tex. 2010). A controversy must exist between the parties at every stage of the legal proceedings, including the appeal. *Bd. of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002). "If a controversy ceases to exist—'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'—the case becomes moot." *Williams*, 52 S.W.3d at 184 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). A case is moot when a judgment cannot have a practical effect on an existing controversy. *Reule v. RLZ Invs.*, 411 S.W.3d 31, 32

12

(Tex. App.—Houston [14th Dist.] 2013, no pet.); *see Meeker v. Tarrant Cty. Coll. Dist.*, 317 S.W.3d 754, 759 (Tex. App.—Fort Worth 2010, pet. denied). When a case becomes moot on appeal, we set aside the trial court's judgment and dismiss the case. *See Marshall v. Hous. Auth. of San Antonio*, 198 S.W.3d 782, 785 (Tex. 2006); *Reule*, 411 S.W.3d at 32; *Meeker*, 317 S.W.3d at 759.

The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, among other procedural vehicles. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

### B. *Impact of* Dacus *on Perez's Claims in this Suit*

As a preliminary matter, we address the portions of Perez's pleadings and issues on appeal in which she asserts complaints related to the Charter Amendment, including her claim that the Drainage Fee Ordinance has already been determined to be invalid because of the litigation surrounding the Charter Amendment, and, therefore, the collection of revenue under the Ordinance is illegal.

In *Dacus II*, the Texas Supreme Court declared that Proposition I, providing for the creation of the Pay-As-You-Go Fund (the DDSR Fund), was not submitted to the voters in November 2010 "with such definiteness and certainty that voters

13

would not be misled." 466 S.W.3d at 829. On remand for further proceedings, the Fourteenth Court of Appeals, in *Dacus III*, affirmed the judgment of the trial court on remand holding that the election on Proposition I, amending the City charter to provide for the DDSR Fund, was void, and it ordered the City to hold a new election on the measure. 2017 WL 536647, at *2, 5. The supreme court denied the City's petition for review of the Fourteenth Court of Appeals' decision in *Dacus III*, finally resolving the controversy regarding the validity of the Charter Amendment.

In this suit, Perez challenges the legality of the DDSR Fund established in December 2011 pursuant to Proposition I. Perez filed this suit after the supreme court held, in *Dacus II*, that the language of Proposition I was too uncertain to enable voters to make an informed choice on the Proposition, but before the Fourteenth Court of Appeals held, in *Dacus III*, that the election was void and ordered a new one. Because of the Fourteenth Court of Appeals' decision in *Dacus III*, which became final after Perez filed this suit and while this appeal was pending, issues relating to the Charter Amendment have been resolved by the judgment declaring the Charter Amendment void and ordering a new election on the measure. Therefore, any further complaints regarding validity of the Charter Amendment are moot. *See Reule*, 411 S.W.3d at 32; *Meeker*, 317 S.W.3d at 759. It is void.

14

Perez alleges, first, that the City and other individual defendants wrongfully relied upon authority granted pursuant to a void Charter Amendment. However, the controversy regarding the validity of the Charter Amendment was not yet resolved at the time Perez filed her petition. Any claims that the City or City officials acted improperly in failing to recognize the invalidity of the Charter Amendment before its invalidity was judicially determined were premature at the time Perez filed this suit. *See Perry*, 66 S.W.3d at 250; *Gibson*, 22 S.W.3d at 851–52 (holding that issue is ripe for decision when "*at the time a lawsuit is filed*, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote'") (emphasis in original) (quoting *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)).

Moreover, the judicial declaration that the Charter Amendment is void does not help Perez's case here. Although the *Dacus* line of cases addressed the Charter Amendment, it did not address the Drainage Fee Ordinance. Nothing in the *Dacus* cases invalidated or called into question the City's authority to pass the Drainage Fee Ordinance pursuant to its constitutional home-rule authority or Local Government Code Chapter 552. Thus, to the extent that Perez's claims are based on her allegations that the *Dacus* cases have invalidated the Drainage Fee Ordinance and that, as a result, the City or individual defendants have acted

15

improperly in enforcing the Ordinance, her claims are misplaced. *See Perry*, 66 S.W.3d at 250; *Gibson*, 22 S.W.3d at 851–52.

We conclude that the trial court lacked subject-matter jurisdiction over any claims dependent on the Charter Amendment's having been declared void, and, thus, it properly dismissed those claims based on the City's plea to the jurisdiction.

## C. *Ripeness of Perez's Claim for a Declaratory Judgment that the Ordinance is Invalid*

Perez also argues, however, that the Drainage Fee Ordinance itself is illegal and invalid in its own right. Perez challenges the validity of the Drainage Fee Ordinance based in part on her assertion that the judgment voiding the Charter Amendment likewise invalidated the Drainage Fee Ordinance because the City otherwise lacked the authority to collect the fees pursuant to the Ordinance and, accordingly, those fees are being illegally collected. She also argues that the fees were used in part for projects "clearly unrelated to drainage systems such as traffic signal reconstruction, bridge replacement, [and] street intersection improvements." But she fails to plead any such "illegal" expenditure with specificity.

The City contests Perez's assertion. The City asserted both in the trial court and on appeal that it had authority independent of the Charter Amendment to pass and enforce the Drainage Fee Ordinance as it did. The City asserts that the Drainage Fee Ordinance was passed pursuant to the City's authority as a home-rule city governed by a city charter and pursuant to authority granted by Local

16

Government Code Chapter 552. The City further argues in its brief on appeal that the Charter Amendment was unnecessary to impose a drainage fee but was proposed solely because it "shifts a portion of *ad valorem* tax revenue from debt service to the DDSR Fund and possibly affects Houston's revenue caps, [and thus] Houston's charter was best served by an amendment and election."

The Texas Constitution provides for home-rule authority. *See* TEX. CONST. art. XI, § 5; *see also* TEX. LOC. GOV'T CODE §§ 9.001–.008 (addressing adoption of charters for home-rule municipalities). A home-rule city derives its power from the Texas Constitution, operates by its charter, and "possess[es] the full power of self government and look[s] to the Legislature not for grants of power, but only for limitations on their power." *See Town of Lakewood Vill. v. Bizios*, 493 S.W.3d 527, 531 (Tex. 2016).

Local Government Code Chapter 552, also known as the Municipal Drainage Utility Systems Act, sets out procedures for municipalities to address concerns regarding drainage. *See* TEX. LOC. GOV'T CODE §§ 552.041–.054 (setting out procedures for municipalities to create drainage utility that can address drainage concerns). The Drainage Fee Ordinance itself states:

> [T]his Ordinance has been prepared for consideration by City Council in conformance with Subchapter C of Chapter 552 of the Texas Local Government Code and the City's Home-Rule powers under Article XI, Section 5 of the Texas Constitution to create a City of Houston Municipal Drainage Utility System to accomplish the objective and

17

directives of Section 22, Article IX of the City Charter with regard to streets and drainage[.]

We conclude that Perez's claims based on the validity of the Drainage Fee Ordinance in its own right are ripe for determination. We therefore turn to Perez's standing to bring these claims.

**D.** ***Perez's Standing to Seek a Judgment Declaring the Ordinance Invalid, Reimbursement for "Illegally Collected" Drainage Fees, and an Injunction Against the Future Collection of Drainage Fees***

In her first issue on appeal, Perez argues that she has standing to assert a legal claim for reimbursement of all drainage charges made under the Drainage Fee Ordinance because, as a municipal taxpayer who paid, and continues to pay under duress, an illegal drainage fee assessed by the City, she can demonstrate both that she has standing to sue as a taxpayer and that she has suffered a particularized injury.

*1.      Perez's claim that this is a suit to recover illegally collected drainage fees*

We begin our analysis by recognizing that although Perez has pleaded that she paid "illegal" drainage fees, she has cited to no authority declaring illegal the Drainage Fee Ordinance pursuant to which the fees were assessed and collected. Perez herself seeks such a declaration in the underlying suit, but she does not cite to, nor could we find, any authority declaring the Drainage Fee Ordinance invalid or void. Perez makes multiple references to the *Dacus* case; however, as discussed

18

above, that case addressed only the validity of the ballot language for the Proposition I Charter Amendment and did not address the validity of the Drainage Fee Ordinance. *See, e.g.*, *Dacus III*, 2017 WL 536647, at \*2. Nor has she identified what measurable added illegal activity is supported by the fee that was not authorized by the City's ability to collect drainage fees conferred on it by the Local Government Code.  Thus, Perez misconstrues the facts of this case when she asserts that she was forced to pay "illegal" fees.

Accordingly, Perez cannot rely on the line of cases she cites in her brief on appeal, which provide for, as she characterizes it, "reimbursement of illegal fees and taxes . . . when the public entity compels compliance with a void law and subjects a person to punishment if he refuses or fails to comply." *See, e.g.*, *State v. Akin Prods. Co.*, 286 S.W.2d 110, 110–12 (Tex. 1956) (holding, where supreme court had previously held tax on citrus industry unconstitutional in its entirety and plaintiffs/taxpayers had obtained permission to sue State for recovery of funds subsequently collected under that unconstitutional act, that taxes paid under duress were recoverable).  These cases do not apply to a situation, like the one here, where the underlying law—here, the Drainage Fee Ordinance—has not been declared invalid and no specific showing of any illegality of the fees collected has been made.

2.    *Perez's standing to maintain her suit for declaratory relief*

Perez argues that her pleadings and jurisdictional evidence are sufficient to establish her standing to pursue her claims for a judgment declaring the Drainage Fee Ordinance illegal.  We disagree.

"In general, taxpayers do not have a right to bring suit to contest government decision-making[.]" *Bland Ind. Sch. Dist.*, 34 S.W.3d at 555. The Texas Supreme Court has explained why lawsuits such as Perez's are disfavored as a matter of public policy:

> Generally, a citizen lacks standing to bring a lawsuit challenging the lawfulness of governmental acts. This is because governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review.  Thus, standing doctrines reflect in many ways the rule that neither citizens nor taxpayers can appear in court simply to insist that the government and its officials adhere to the requirements of law.

*Andrade v. Venable*, 372 S.W.3d 134, 136–37 (Tex. 2012) (internal quotation marks and citations omitted). The supreme court has further held that "[t]his pragmatic approach ensures that there is a real need to exercise the power of judicial review in a particular case, and it helps guarantee that courts fashion remedies no broader than required by the precise facts to which the court's ruling would be applied." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011) (internal quotation marks omitted) (quoting *Lance v. Coffman*, 549 U.S. 437, 441 (2007)). "Based partly on the notion of judicial self governance, this rule

20

recognizes that other branches of government may more appropriately decide 'abstract questions of wide public significance,' particularly when judicial intervention is unnecessary to protect individual rights.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

Thus, unless standing to sue the government is conferred by statute, "taxpayers must show as a rule that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action or assert a general right." *Bland Ind. Sch. Dist.*, 34 S.W.3d at 555–56. To establish that she suffered a particularized injury that confers standing upon her, Perez has to demonstrate she "suffered a particularized injury distinct from that suffered by the general public" by the drainage fees collected pursuant to the Drainage Fee Ordinance. *See id.*

Perez first asserts that she has standing to bring claims against the City as a municipal taxpayer, arguing that she pays both the allegedly illegal drainage fees and *ad valorem* taxes. She argues that the City "is going to spend tax dollars illegally because each year the Houston City Council passes an annual fiscal budget which spends hundreds of millions of dollars of assessed and collected drainage charges on projects not permitted under law" and in violation of the revenue cap on *ad valorem* taxes.

21

Perez also argues that she suffered a unique injury distinct from that suffered by the general public because she is the only person who was required to pay the drainage fees associated with her unique pieces of property. Specifically, Perez argues that she "owned two separate real properties which were assessed on a monthly basis for drainage charges." As evidence, Perez provided her water bills with a line item for drainage charges and assessments of additional late-payment fees. Perez argues that these payments demonstrate a particularized injury, thereby giving her standing to seek reimbursement of the paid drainage fees. She argues in her appellate brief, "Indeed, no one but Perez was charged with this illegal drainage fee for these two specific pieces of real estate, and no one was forced to pay an illegal fee under duress for these two specific parcels of land except for [Perez]."

However, this showing is insufficient to demonstrate a particularized injury. The municipal fees were assessed to property owners across the City. The payment of municipal fees, like the drainage fees assessed against Perez's properties here and numerous other properties in the City, does not constitute a particularized injury sufficient to confer standing to sue for recovery of the fees. *See id.*

There is, however, a long-established exception to the general rule that a particularized injury is required for taxpayer standing. Specifically, the Texas Supreme Court, in cases like *Bland Independent School District* and *Andrade*, has

22

explained a narrow, judicially-created exception to the particularized-injury rule under which a taxpayer has standing to sue to enjoin the illegal expenditure of public funds without demonstrating a particularized injury. *Andrade*, 372 S.W.3d at 137; *Williams*, 52 S.W.3d at 179; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 556; *Osborne v. Keith*, 177 S.W.2d 198, 200 (Tex. 1944); *Hoffman v. Davis*, 100 S.W.2d 94, 95 (Tex. 1937); *City of Austin v. McCall*, 68 S.W. 791, 794 (Tex. 1902).

"Implicit in [the taxpayer-standing] rule are two requirements: (1) that the plaintiff is a taxpayer; and (2) that public funds are expended on the allegedly illegal activity." *Williams*, 52 S.W.3d at 179. Because such lawsuits are "drastic," a citizen pursuing such a suit "must bring himself strictly within the established rules." *Osborne*, 177 S.W.2d at 200. "This must be a measurable, added expenditure—not one that would have been made in spite of the allegedly illegal activity." *Andrade*, 372 S.W.3d at 138; *see Williams*, 52 S.W.3d at 181–82. The plaintiff must be able to allege that the challenged activity is supported by a separate tax, or paid for from a particular appropriation, or that the allegedly illegal activity adds some sum to the cost of conducting the activity. *Andrade*, 372 S.W.3d at 138. In addition, "the expenditure cannot be *de minimis*—it must be significant." *Id.* (citing *Williams*, 52 S.W.3d at 183 (noting that "county-paid employees 'spent a significant amount' of time operating the challenged program")). "Unless a

plaintiff can meet these requirements, there has not been a pecuniary injury to the taxpayers generally and the taxpayer's interest is not direct enough for his suit to proceed." *Id.*

In sum, it is not enough for the plaintiff to establish that she is a taxpayer—the plaintiff "may maintain an action solely to challenge proposed *illegal expenditures*." *Williams*, 52 S.W.3d at 180. Moreover, under this exception, "a taxpayer may *not* sue to recover funds previously expended." *Id.*; *Turner v. Robinson*, 534 S.W.3d 115, 123–24 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding that taxpayer may challenge proposed illegal expenditures but may not recover funds previously expended or challenge expenditures that are merely "unwise or indiscreet"). Thus, "[t]o be entitled to municipal taxpayer standing, a litigant must prove that the government is actually expending money on the activity that the taxpayer challenges; merely demonstrating that tax dollars are spent on something related to the allegedly illegal conduct is not enough." *Williams*, 52 S.W.3d at 181; *see Andrade*, 372 S.W.3d at 138.

The City argues that Perez failed to plead or to prove that the City is actually expending money illegally. We agree with the City. Perez's live petition alleges generally that the City has been illegally assessing, collecting, and expending funds for drainage and street improvements pursuant to the void Charter Amendment and the allegedly void Ordinance and that an unidentified portion of these

24

improvements are unrelated to drainage systems and are illegal expenditures. But nowhere in her pleadings does Perez identify which specific expenditures, if any, are or were illegal. She does not allege or provide jurisdictional evidence that it is illegal for the City to expend the funds on the generally identified drainage projects. And it is clear from the plain language of Local Government Code Chapter 552 and the City's home-rule powers under Article XI, section 5 of the Texas Constitution, and Article IX, section 22 of the City Charter, regarding streets and drainage—all of which are referenced in the Drainage Fee Ordinance itself as authority for the powers granted to the City by the Ordinance—that the City had the general authority to enact the Ordinance and to grant it the powers referenced therein.

Perez has failed to plead any facts showing that the City is actually making any "measurable, added expenditure" of funds on illegal, unconstitutional, or statutorily unauthorized activities. Her live pleadings challenge aspects of the assessment and collection of the drainage fees without any showing that the City's charter does not permit the assessment and collection of drainage fees and associated expenditures without any particularized showing of funds allocated to an additional, significant, measurable illegal activity. But taxpayer standing extends only to challenge such particularized *illegal expenditures*. *See Andrade*, 372 S.W.3d at 138. As the Texas Supreme Court stated in both *Andrade* and

25

*Bland Independent School District*, "Generally, 'a citizen lacks standing to bring a lawsuit challenging the lawfulness of governmental acts.' This is because '[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review.'" *Andrade*, 372 S.W.3d at 136 (internal citations omitted) (quoting *NAACP of Austin*, 345 S.W.3d at 6); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.

We agree with the City that Perez has failed to plead or demonstrate that the City has actually expended a significant amount of specifically identified funds illegally. *See Williams*, 52 S.W.3d at 180; *Turner*, 534 S.W.3d at 123. Accordingly, we conclude that Perez has failed to establish that she has taxpayer standing to challenge any illegal expenditures by the City as pleaded in this case. *See Williams*, 52 S.W.3d at 179–80. Because Perez lacks standing to pursue the claims she filed here, and her lack of standing is sufficient to support the trial court's grant of the City's plea to the jurisdiction, we need not address her remaining issues regarding governmental immunity and ripeness.

## Conclusion

We affirm the trial court's dismissal of Perez's claims.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Lloyd, and Kelly.