

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00089-CV

———————————————

ROBERT S. JOHNSON, Appellant

V.

JEFF WILLIAMS, MAYOR; THE CITY OF ARLINGTON, TEXAS; ZACK MAXWELL; AND FAITH BUSSEY, Appellees

———————————————

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-304980-18

———————————————

Before Gabriel, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In this suit, Arlington resident Robert S. Johnson has challenged the legality of an amendment to Arlington's city charter. Johnson contended that citizens committed fraud in handling a petition drive, and the resulting amendment should therefore be voided. The trial court granted pleas to the jurisdiction and dismissed Johnson's claims.

On appeal, Johnson contends that he alleged a valid election contest that endowed the trial court with jurisdiction. But under the type of claim that Johnson has raised, the wrongful act must be committed by an "election officer or other person officially involved in the administration of the election." The citizens who circulated the petition do not qualify as such, and Johnson has therefore failed to make out a viable claim. And because Johnson's proposed alternative—to replead a new cause of action against a different party—would be both belated and likely futile, the trial court did not err in dismissing the suit without the opportunity to replead. We therefore affirm as modified.

## I.    BACKGROUND

Arlington residents initiated a petition drive for an amendment to the city charter that would impose term limits on the mayor and the city council. A summary appended to the petition explained that the amendment would not require early removal of any current councilmembers who were already over the proposed term limit. When the petition obtained the required signatures, the city council placed it on the ballot as

2

"Proposition E," where it won by a vote of 61,701 For to 36,908 Against. The text of the petition was subsequently enacted as an amendment to Arlington's city charter.

After the enactment, Johnson filed suit against Arlington and its mayor, Jeff Williams. Johnson asserted that due to careless drafting, the amendment did require early removal of two councilmembers after all, contrary to what the petition summary promised. Johnson asserted that because the summary misled petition signers, the petition's circulators had committed fraud, and the resulting amendment should be struck down.

Arlington, Williams, and two intervenors[1] filed pleas to the jurisdiction and motions for summary judgment. The trial court granted the pleas and dismissed Johnson's claims for want of jurisdiction; in the alternative, the trial court granted summary judgment against Johnson. He appeals.

## II.   PLEA TO THE JURISDICTION

We begin with Johnson's third issue, in which he contends that the trial court erred by granting the pleas to the jurisdiction. He asserts that his petition stated a viable election contest that is sufficient to establish jurisdiction, and the trial court therefore erred in concluding that it lacked jurisdiction to hear the cause.

---

[1]These intervenors are Zack Maxwell and Faith Bussey, who intervened as representatives for Citizens for a Better Arlington. Maxwell and Bussey explained that they are residents of Arlington who collected signatures for the petition.

We review de novo a trial court's ruling on a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004). Our jurisdictional analysis begins with the plaintiff's live pleadings, *see id.* at 226, for it is the pleader's initial burden to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 239 (Tex. App.—Fort Worth 2018, pet. denied). We construe the pleadings liberally in the plaintiff's favor and look to the pleader's intent. *Id.*

"Elections are political matters, and the courts may take jurisdiction of political matters only if the law has specifically granted such authority." *Thiel v. Oaks*, 535 S.W.2d 1, 2 (Tex. App.—Houston [14th Dist.] 1976, no writ) (citing *Lund v. Alanis*, 381 S.W.2d 955, 956 (Tex. App.—San Antonio 1964) (per curiam), *writ dism'd*, 384 S.W.2d 123 (Tex. 1964) (per curiam)). Where the law has provided a mode of deciding election contests, designed to be final, the courts have no authority to adjudicate such cases other than what the law may give to them. *Wright v. Fawcett*, 42 Tex. 203, 206 (1874); *see also Cuellar v. Maldonado*, Nos. 13-14-00228-CV, 13-14-00230-CV, 2014 WL 2158135, at *3 (Tex. App.—Corpus Christi–Edinburg May 16, 2014, no pet.) (mem. op.).

The question is therefore whether Johnson has alleged the sort of dispute that the Election Code gave the trial court the power to resolve. The statute grants the district court exclusive original jurisdiction over an "election contest." Tex. Elec. Code Ann. § 221.002(a). The current statute narrowly defines an "election contest" as an

4

inquiry concerning whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because

(1) illegal votes were counted; or

(2) an election officer or *other person officially involved in the administration of the election*:

(A) prevented eligible voters from voting;

(B) failed to count legal votes; or

(C) *engaged in other fraud* or illegal conduct or made a mistake.

*Id.* § 221.003(a) (emphasis added); *City of Granite Shoals v. Winder*, 280 S.W.3d 550, 557 (Tex. App.—Austin 2009, pet. denied). "[A] challenge that does not concern whether the outcome of the election was incorrect for one of the four reasons listed in the statute is, by definition, not an election contest." *Granite Shoals*, 280 S.W.3d at 557.

Under Johnson's theory of the case, the petition circulators engaged in fraud when they spread a dishonest summary falsely stating that their petition would not force any city councilmembers out of office early. However, for Johnson's claim to constitute an election contest under this fraud theory, the petition circulators must qualify as "an election officer or other person officially involved in the administration of the election." Tex. Elec. Code Ann. § 221.003(a)(2). Johnson does not contend that petition circulators formally qualify as election officers. Thus, the success of Johnson's appeal hangs on whether a petition circulator qualifies as an "other person officially involved in the administration of the election." *Id.*

5

The statute does not define this phrase, and we therefore resort to principles of statutory construction to determine its meaning. In construing statutes, our primary objective is to give effect to legislative intent. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). We look first to the plain language as the most reliable guide to that intent, construing the text in light of the statute as a whole. *Id.* The statutory terms bear their common meaning, unless the text provides a different meaning or the common meaning leads to an absurd result. *Id.* The statutory words must be interpreted considering the context in which they are used, not in isolation. *Id.*

We begin with the common meaning of the words "other person officially involved in the administration of the election." One dictionary defines the word "officially" as "with official authorization; formally." Webster's Third New Int'l Dictionary Unabridged 1567 (2002). The most apt definition of "involve" is "to draw in as a participant." *Id.* at 1191. Finally, in this situation, "administration" is the act of administering, which the same dictionary defines as "to manage the affairs of" or "to direct or superintend the execution, use, or conduct of." *Id.* at 27. Combining these definitions, the common meaning of the phrase in question might be approximated as "a formally authorized participant in managing the affairs of an election."

Johnson has not alleged any facts suggesting that the petition circulators were given formal authority to manage the affairs of the election, and he has not explained on appeal how they had any formal authority. If the charter-amendment statute is any indication, the petition circulators had no such authority. *See* Tex. Loc. Gov't Code

6

Ann. § 9.004. That statute defines the process by which petition circulators may seek to amend a city charter. The charter-amendment statute does not speak of any one petition circulator who is given even a slight measure of official clout in this process; rather, it speaks of a grassroots effort by a group of "qualified voters," with no overlay of authority:

> The governing body shall submit a proposed charter amendment to the voters for their approval at an election if the submission is supported by a petition signed by a number of qualified voters of the municipality equal to at least five percent of the number of qualified voters of the municipality or 20,000, whichever number is the smaller.

*Id.* § 9.004(a). When the signature minimum is satisfied and the petition is submitted, the work of the circulators is complete. *Id.* The petition is then handed off to bona fide officers who begin the administration in earnest. *See id.* § 9.004(b)–(e) (prescribing the procedure by which the local government shall organize an election on an initiative measure and submit a measure to voters). To be sure, the petition circulators shape the content of an election in the same way that a candidate for office shapes the ballot by placing her name before the voters. But like a candidate, a petition circulator does not manage the affairs of the election, he submits his proposal to the management of others with formal administrative authority over the election. Thus, the mechanics of the charter-amendment statute suggest that the petition circulators are not "officially involved in the administration of the election," according to the plain meaning of that phrase. *See* Tex. Elec. Code Ann. § 221.003(a)(2).

7

Our plain-language interpretation of this phrase is reinforced by the context in which it sits.  Again, this form of election contest is defined by whether "an *election officer or other* person officially involved in the administration of the election" has committed an electoral wrong.  *Id.* (emphasis added).  According to this context, an election officer is a person officially involved in the administration of the election, and thus we may look to the role of an election officer to determine what it means to be so involved.  Put simply, the person in question should have a roughly similar role as an election officer.

A review of the Election Code provisions dealing with election officers shows that petition circulators bear no such similarity.  Title 3 of the Election Code is instructive, for it defines several types of election officers and the ways in which they are given formal authorization to manage the affairs of the election.  According to Title 3, an election officer typically has a title,[2] a formal appointment process,[3] eligibility

---

[2]They are, variously, election administrators, judges, clerks, watchers, and inspectors.

[3]Tex. Elec. Code Ann. §§ 31.031–.032 (setting out appointment process for county elections administrator); *id.* §§ 32.001–.009 (same, election judges); *id.* §§ 32.031–.034 (same, election clerks); *id.* §§ 33.001–.007 (same, election watchers); *id.* § 34.001 (same, election inspectors).

8

requirements for office,[4] compensation,[5] training,[6] and powers and duties meant to ensure the fair and orderly operation of the electoral process.[7] The charter-amendment statute does not provide any of these things for petition circulators. *See* Tex. Loc. Gov't Code Ann. § 9.004(a). And judging by Johnson's allegations, the petition circulators apparently shared none of these qualities. He does not allege any facts suggesting that the petition circulators had public appointment, compensation, duties, or other trappings of office. Rather, Johnson describes them as ordinary citizens whose only involvement in the election was to draft and circulate the petition in question. Thus, under a plain reading of Section 221.003, as informed and reinforced by its context, the petition circulators do not qualify as other persons officially involved in the administration of the election. *See* Tex. Elec. Code Ann. § 221.003(a).

"[A] proper deference for their respective powers that is imposed upon the several departments of the government should constrain the courts to caution and

---

[4]*Id.* § 31.034 (defining eligibility requirements for county elections administrators); *id.* §§ 32.051–.056 (same, election judges and clerks); *id.* §§ 33.031–.035 (same, election watchers).

[5]*Id.* § 31.039 (providing compensation for county elections administrators); *id.* §§ 32.091–.094 (same, election judges or clerks); *cf. id.* § 34.003 (providing reimbursement for election inspectors).

[6]*Id.* §§ 32.111(c), .114 (requiring training for election judges and clerks).

[7]*Id.* §§ 31.043–.044 (defining duties and powers of county elections administrators); *id.* §§ 32.071–.074 (same, election judges and clerks); *id.* §§ 33.051–.061 (same, election watchers); *id.* § 34.002 (same, election inspectors).

9

certainty when their authority is invoked against the determination of the popular will."

*City of Austin v. Thompson*, 219 S.W.2d 57, 60 (Tex. 1949) (quoting *City of Dallas v. Dallas Consol. Elec. St. Ry. Co.*, 148 S.W. 292, 294 (Tex. 1912)). Johnson's allegations gave the district court no jurisdictional basis to interfere with the will of the public, as it was expressed both through the initiative process and the ballot box.[8] Because Johnson failed to carry his initial burden to allege facts demonstrating the court's jurisdiction to hear the cause, the trial court did not err in granting the pleas to the jurisdiction. *See Westworth Vill.*, 558 S.W.3d at 239. We overrule Johnson's third issue. This renders it unnecessary to consider Johnson's fourth and fifth issues, each of which is contingent upon the outcome of the third issue.

---

[8]As our supreme court has made clear, the initiative process is a civic tradition with deep roots, and it should not lightly be disturbed:

> The initiative process . . . affords direct popular participation in lawmaking. The system has its historical roots in the people's dissatisfaction with officialdom's refusal to enact laws. It is an implementation of the basic principle of Article I, Section 2, of the Texas Bill of Rights: "All political power is inherent in the people . . . ." This court stated in *Taxpayer's Ass'n of Harris County v. City of Houston*, that "the power of initiative and referendum . . . is the exercise by the people of a power reserved to them, and not the exercise of a right granted," and that "in order to protect the people of the city in the exercise of this reserved legislative power, such charter provisions should be liberally construed in favor of the power reserved." . . . The City Council's refusal to submit the proposed amendments to the vote of the people thwarts not only the legislature's mandate but the will of the public.

*Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex. 1980) (orig. proceeding) (citations omitted).

### III. OPPORTUNITY TO REPLEAD

We next take up Johnson's first issue, in which he contends that he should have been afforded the opportunity to replead. To cure the jurisdictional defect, he proposes to abandon his claim concerning the petition circulators' fraud and to raise an entirely different kind of election claim relating to the alleged wrongdoing of a different party: the City of Arlington. According to Johnson, Arlington gave an inadequate description of Proposition E on the ballot, because the ballot failed to mention whether the measure would impact sitting councilmembers who were over the term limits. Johnson submits that this effect on incumbents is the sort of "chief feature" that must be described on the ballot under *Dacus v. Parker*, 466 S.W.3d 820, 825 (Tex. 2015). Johnson argues that his new *Dacus* claim would establish jurisdiction, and he urges us to grant a remand to allow him to plead such a claim.

It is within our discretion, though, to decline to allow Johnson to replead in this fashion, as is demonstrated by *Clint Independent School District v. Marquez*, 487 S.W.3d 538, 558–59 (Tex. 2016). In *Clint*, several parents filed suit to challenge a school district's funding decisions. *Id.* at 543. The supreme court determined that these claims were subject to exhaustion of administrative remedies. *Id.* at 547–49. To cure the jurisdictional defect, the parents proposed to abandon the claims that were subject to exhaustion and, in their stead, "to plead new claims over which the trial court does have jurisdiction." *Id.* at 559. The court rejected this request, reasoning that "the right to amend typically arises when the pleadings fail to allege enough jurisdictional facts to

11

demonstrate the trial court's jurisdiction." *Id.* "[T]he jurisdictional bar arises not from a lack of factual allegations but from the nature of the parents' claims." *Id.* The court concluded that it was not required to remand in order to allow the parents to abandon the old claims and to plead entirely new claims in an effort to establish jurisdiction. *Id.* The same reasoning applies to this case. For Johnson, cure would not be a matter of restating the same claims in a more suitable or factually sound way, it would be a matter of abandoning the old claims and alleging new and different ones. For reasons of fairness and economy, we are not obligated to allow such a maneuver. *See id.*; *see also House of Praise Ministries, Inc. v. City of Red Oak*, No. 10-15-00148-CV, 2017 WL 1750066, at *8 (Tex. App.—Waco May 3, 2017, no pet.) (mem. op.) (concluding that a party was not entitled to remand in order to "change its course and allege facts that would raise a claim different from the one it alleged and disposed of by the trial court's judgment").

The *Clint* court offered another rationale for declining to remand: the parents' newly proposed claim was "not well founded," and thus allowing remand to replead in this fashion would not improve their jurisdictional predicament. *Clint*, 487 S.W.3d at 559. Because remand would be futile, it was not required, for a pleader must be given an opportunity to amend in response to a plea to the jurisdiction only if it is possible to cure the pleading defect. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). That rationale also applies here, for as we explain, Johnson's proposed *Dacus* claim does not appear to be well founded or likely to cure the jurisdictional defect.

12

Under *Dacus*, municipalities retain "broad discretion" in wording a ballot description of a measure. *Bryant v. Parker*, 580 S.W.3d 408, 412 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (quoting *Dacus*, 466 S.W.3d at 826). The proposed charter amendment need not be printed in full on the ballot, but the ballot language must substantially submit the question with definiteness and certainty. *Dacus*, 466 S.W.3d at 825. "In other words, the ballot must identify the measure *by* its chief features, showing its character and purpose." *Id.* Ballot language may fail this test in two ways: (1) "it may affirmatively misrepresent the measure's character and purpose or its chief features," or (2) "it may mislead the voters by omitting certain chief features that reflect its character and purpose." *Bryant*, 580 S.W.3d at 412 (quoting *Dacus*, 466 S.W.3d at 826).

In *Bryant*, the court dealt with a dispute that is highly similar to the one that Johnson seeks to raise on remand. *See id.* at 415. There, voters attempted an election contest of a city-charter amendment regarding term limits, and they complained that the ballot failed under *Dacus* because it neglected to describe what impact the term limits would have on certain incumbents. *Id.* The court rejected the argument as a matter of law, holding that the chief features were the term limits themselves. *Id.* at 413. The *Bryant* court reasoned that whatever tertiary impact the term limits would have on a few incumbents was "not the sort of 'chief feature' the supreme court has identified in the

13

past." *Id.* at 415. For the same reason, we doubt that Proposition E's supposed[9] impact on two incumbents is the sort of chief feature that will sustain a *Dacus* claim. *See id.* It is therefore difficult to see how allowing Johnson the opportunity to plead this claim "would serve [any] legitimate purpose." *See Koseoglu*, 233 S.W.3d at 840.

Because we may deny the opportunity to replead when it would only be used to belatedly raise new claims, and because allowing Johnson to raise the claim he proposes would likely be futile, we decline to remand the case. *See Clint*, 487 S.W.3d at 559. We overrule Johnson's first issue.

## IV.  SUMMARY JUDGMENT

Lastly, we address Johnson's second issue, in which he contends that if the trial court lacked jurisdiction, the trial court's rendition of summary judgment is erroneous. We agree. Because the trial court lacked jurisdiction, we vacate the portion of the judgment that addressed the merits of the parties' claims. *Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 838 (Tex. App.—Austin 2010, no pet.); *see Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999).

---

[9]Johnson has argued that the language of the charter amendment requires two incumbents to leave office early. We are not convinced that this is the case. Regardless, we need not resolve this question to dispose of this appeal.

14

## V.     CONCLUSION

We vacate the portion of the trial court's judgment that grants summary judgment and affirm as modified.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  November 27, 2019