# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-0047

════════════

ALLEN MARK DACUS, ELIZABETH C. PEREZ, AND REV. ROBERT JEFFERSON,
PETITIONERS,

v.

ANNISE D. PARKER AND CITY OF HOUSTON, RESPONDENTS

══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

══════════════════════════════════════════════════════

**Argued February 24, 2015**

JUSTICE DEVINE delivered the opinion of the Court.

JUSTICE GUZMAN filed a concurring opinion, in which JUSTICE WILLETT joined.

JUSTICE BROWN did not participate in the decision.

In this election contest, we consider whether a ballot proposition for a proposed city charter amendment meets the common law standard preserving the integrity of the ballot. The court of appeals upheld the proposition in this case. 383 S.W.3d 557, 571 (Tex. App.—Houston [14th Dist.] 2012). Even though the ballot did not make clear that the amendment imposed charges directly on many voters, the court concluded it still described the amendment's character and purpose and enabled voters to distinguish it from other propositions on the ballot. *See id.* at 566. In so doing, the court departed from the applicable standard, which requires that proposed amendments be

submitted with such definiteness and certainty that voters are not misled. Though the ballot need not reproduce the text of the amendment or mention every detail, it must substantially identify the amendment's purpose, character, and chief features. Widespread charges are such a chief feature. Accordingly, we reverse the judgment of the court of appeals and remand to the trial court for further proceedings.

## I. Background and Procedural History

A narrow majority of voters in the City of Houston adopted an amendment to their City Charter creating a "Dedicated Pay-As-You-Go Fund for Drainage and Streets." The amendment—approved in the November 2, 2010 election—required the City to obtain funding from several sources. One source was drainage charges to be imposed on properties benefitting from the drainage system.[1] Prior to the election, the text of the proposed amendment (and the text of two others), a fiscal impact summary, and the text of the proposition to be placed on the ballot were published in the *Houston Chronicle*. The fiscal impact summary and the text of the amendment indicated that drainage charges would be imposed. The language on the ballot, however, merely stated the amendment was "Relating to the Creation of a Dedicated Funding Source to Enhance, Improve and Renew Drainage Systems and Streets." It asked, "Shall the City Charter of the City of Houston be amended to provide for the enhancement, improvement and ongoing renewal of

---

[1] The amendment described this source of funding as follows:

[a]ll proceeds of drainage charges, which beginning in fiscal year 2012, and continuing thereafter shall be imposed in an equitable manner as provided by law to recover allocable costs of providing drainage to benefitting properties, with drainage charges initially set at levels designed to generate at least $125 million for fiscal year 2012.

Houston's drainage and streets by creating a Dedicated Pay-As-You-Go Fund for Drainage and Streets?"  It did not mention the drainage charges.

Shortly after the election, several voters (the "Contestants")[2] filed an election contest.  They sought a declaration that the proposition was "illegal and invalid as a matter of law," and a determination that the adoption of the amendment was invalid.  The Contestants named the City of Houston and the Mayor, Annise Parker, as the contestees.[3]  The City filed a motion for summary judgment, which the trial court granted, denying the Contestants all relief.  The Contestants thereafter filed a motion to modify the judgment or enter judgment nunc pro tunc, as well as a motion for a new trial.  The trial court denied the Contestants' motions, and the court of appeals affirmed.  Here, the Contestants argue that the court of appeals erred in affirming the trial court's summary judgment in favor of the City and denying their motion for new trial.

## II. Jurisdiction

This is an election contest with special jurisdictional considerations.  The court of appeals' decision in an election contest is generally final.  TEX. GOV'T CODE § 22.225(b)(2).  There are exceptions, however, such as when "one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court."  *Id.* §§ 22.001(a)(2); 22.225(c).  Courts hold differently from each other "when there is inconsistency in their respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants."  *Id.*

---

[2] We refer to the petitioners, Allen Mark Dacus, Elizabeth C. Perez, and Rev. Robert Jefferson, as the "Contestants."  It is not disputed in this summary judgment proceeding that they have standing as registered qualified voters in Harris County, Texas.  *See* TEX. ELEC. CODE § 233.002.

[3] We refer to the City and Mayor collectively as "the City."

3

§ 22.225(e). As discussed in more detail below, the decisions of the courts of appeals conflict regarding the common law standard for describing a measure on the ballot. This inconsistency should be clarified, and we have jurisdiction.

### III. Sufficiency of Ballot Language

The parties dispute whether the ballot sufficiently described the charter amendment when it did not mention that drainage charges would be imposed.[4] The Texas Election Code grants discretion to "the authority ordering the election [to] prescribe the wording of a proposition" unless otherwise provided by law. TEX. ELEC. CODE § 52.072(a). The "proposition" is "the wording appearing on a ballot to identify a measure," and the "measure" is "a question or proposal submitted in an election for an expression of the voters' will"—in this case, the proposed Charter amendment. *See id.* § 1.005(12), (15). The proposition must be printed "in the form of a single statement." *Id.* § 52.072(b).

The common law protects the integrity of the election with a minimum standard for the ballot language, but the parties disagree over what the standard requires. In 1888, we held that the proposition must "substantially submit[] the question . . . with such definiteness and certainty that the voters are not misled." *Reynolds Land & Cattle Co. v. McCabe*, 12 S.W. 165, 165 (Tex. 1888).[5]

---

[4] The Contestants' briefing focuses on the drainage charges, mentioning another funding source imposed by the amendment—developer-impact fees—only in passing. The Contestants did not mention the developer-impact fees in the court of appeals. Accordingly, we decide this case on the basis of the drainage charges without considering whether the ballot should have mentioned the developer-impact fees.

[5] The statement in *Reynolds Land & Cattle Co.* may have referred to the order calling the election rather than the text of the ballot. *See* 12 S.W. at 166. Since then, this standard has frequently been applied to the ballot language, and we do so today. *See Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999); *City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 895 (Tex. App.—Corpus Christi 2007, pet. denied); *Brown v. Blum*, 9 S.W.3d 840, 847 (Tex. App.—Houston [14th Dist.] 1999, pet. dism'd w.o.j.); *Bischoff v. City of Austin*, 656 S.W.2d 209, 212 (Tex. App.—Austin 1983, writ ref'd n.r.e.); *Moore v. City of Corpus Christi*, 542 S.W.2d 720, 723 (Tex. Civ. App.—Corpus

Beyond summarizing parties' arguments about the standard in 1999, *Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999), and commenting on the standard for ballot descriptions of state constitutional amendments in 1949, *R.R. Comm'n v. Sterling Oil & Ref. Co.*, 218 S.W.2d 415, 418 (Tex. 1949), we have not elaborated on the standard since then. In the meantime, the courts of appeals have articulated several additional rules. Some have said that the proposition should "constitute a fair portrayal of the chief features of the proposed law . . . in words of plain meaning, so that it can be understood by persons entitled to vote."[6] Under this standard, the ballot language "is sufficient if enough is printed on the ballot to identify the matter and show its character and purpose."[7] Some have said that the test of a description's sufficiency is not the level of detail, but "whether from the ballot wording a voter of average intelligence can distinguish one proposition from another on the

Christi 1976, writ ref'd n.r.e.); *Wright v. Bd. of Trs. of Tatum Indep. Sch. Dist.*, 520 S.W.2d 787, 792 (Tex. Civ. App.—Tyler 1975, writ dism'd); *England v. McCoy*, 269 S.W.2d 813, 815 (Tex. Civ. App.—Texarkana 1954, writ dism'd); *Turner v. Lewie*, 201 S.W.2d 86, 91 (Tex. Civ. App.—Fort Worth 1947, writ dism'd).

[6] *Turner*, 201 S.W.2d at 91; *see McAllen Police Officers Union*, 221 S.W.3d at 895; *Brown v. Blum*, 9 S.W.3d at 848; *Wright*, 520 S.W.2d at 792.

[7] *Turner*, 201 S.W.2d at 91; *see In re Roof*, No. 14-12-00258-CV, 2012 WL 1072038, at *1 (Tex. App.—Houston [14th Dist.] Mar. 28, 2012) (per curiam) (mem. op.); *McAllen Police Officers Union*, 221 S.W.3d at 895; *Brown v. Blum*, 9 S.W.3d at 848; *Hardy v. Hannah*, 849 S.W.2d 355, 358 (Tex. App.—Austin 1992, writ denied); *Winger v. Pianka*, 831 S.W.2d 853, 856 (Tex. App.—Austin 1992, writ denied); *Moore*, 542 S.W.2d at 723; *Wright*, 520 S.W.2d at 792; *Hill v. Evans*, 414 S.W.2d 684, 692 (Tex. Civ. App.—Austin 1967, writ ref'd n.r.e.); *England*, 269 S.W.2d at 815; *Whiteside v. Brown*, 214 S.W.2d 844, 851 (Tex. Civ. App.—Austin 1948, writ dism'd).

ballot."[8]  And, at least in cases involving state constitutional amendments, some have said that the ballot should disclose the amendment's "intent, import, subject matter, or theme."[9]

The Contestants assert that the ballot must do more than merely enable voters to identify and distinguish the different propositions from each other, as the court below, 383 S.W.3d at 566, and some other courts of appeals have held, *see, e.g.*, *Hardy*, 849 S.W.2d at 358; *Hill*, 414 S.W.2d at 692.  Instead, it must "substantially submit" the amendment with "definiteness and certainty." *See Reynolds Land & Cattle Co.*, 12 S.W. at 165.  The ballot in this case should have mentioned the drainage charges required by the amendment; by ignoring the charges, the ballot obscured the amendment's "chief features" and its "character and purpose."

The City responds that because of election notices and publication requirements, voters are presumed to be familiar with the measure before the election.  *See Sterling Oil & Ref. Co.*, 218 S.W.2d at 418.  The ballot need not educate voters about what they are already familiar with; it need only identify and distinguish which proposition refers to which measure so that voters know which is which on the ballot.  *See Hardy*, 849 S.W.2d at 358.  According to the City, requiring the ballot to identify a measure's "chief features" is just another way of saying that the proposition must sufficiently identify the measure so that the different propositions can be distinguished on the ballot.

---

[8] *Hardy*, 849 S.W.2d at 358; *see In re Roof*, 2012 WL 1072038, at *1; *McAllen Police Officers Union*, 221 S.W.3d at 895; *Brown v. Blum*, 9 S.W.3d at 848; *Rooms With a View, Inc. v. Private Nat'l Mortg. Ass'n, Inc.*, 7 S.W.3d 840, 850 (Tex. App.—Austin 1999, pet. denied); *Evans*, 414 S.W.2d at 692.

[9] *Rooms With a View, Inc.*, 7 S.W.3d at 850; *see Whiteside*, 214 S.W.2d at 851.  Texas law is more specific about propositions describing state constitutional amendments than those describing charter amendments.  If the legislature does not word the proposition submitting a constitutional amendment, then the secretary of state must "describe the proposed amendment in terms that clearly express its scope and character."  TEX. ELEC. CODE § 274.001(a), (b).

It is true that voters are presumed to be familiar with every measure on the ballot.[10] Election notices for city charter amendments must be published in the newspaper before the election, and the notice must "include a substantial copy of the proposed amendment." TEX. LOC. GOV'T CODE § 9.004(c)(1). Accordingly, the amendment need not be printed in full on the ballot—not all details must be there. *See Sterling Oil & Ref. Co.*, 218 S.W.2d at 418. The proposition on the ballot, according to the Election Code, serves to "identify a measure." TEX. ELEC. CODE § 1.005(15).

But *how* must the ballot identify the measure? Does anything go as long as the voters will manage to distinguish the different propositions on the ballot and which measures they refer to? Our jurisprudence indicates otherwise. Many cases have stated that the proposition must substantially submit the measure, name its chief features, or describe its character and purpose, without even mentioning whether the election involved other propositions needing to be distinguished.[11] Simply put, the proposition must "substantially submit[] the question" with "definiteness and certainty." *See Reynolds Land & Cattle Co.*, 12 S.W. at 165. In other words, the ballot must identify the measure *by* its chief features, showing its character and purpose. *See Wright*, 520 S.W.2d at 792; *Turner*, 201 S.W.2d at 91. Even the Election Code suggests that propositions "describe" measures. *See* TEX. ELEC. CODE § 274.001(a), (b) (requiring the secretary of state at times to word propositions "describ[ing]" proposed state constitutional amendments).

---

[10] *See Sterling Oil & Ref. Co.*, 218 S.W.2d at 418; *In re Roof*, 2012 WL 1072038, at *1; *Brown v. Blum*, 9 S.W.3d at 847–48; *Rooms With a View, Inc.*, 7 S.W.3d at 850; *Hardy*, 849 S.W.2d at 358; *Winger*, 831 S.W.2d at 856; *Bischoff*, 656 S.W.2d at 212; *Moore*, 542 S.W.2d at 723; *Hill*, 414 S.W.2d at 692; *England*, 269 S.W.2d at 815; *Whiteside*, 214 S.W.2d at 851.

[11] *See, e.g.*, *Reynolds Land & Cattle Co.*, 12 S.W. at 165–66; *Moore*, 542 S.W.2d at 724; *England*, 269 S.W.2d at 817–18; *Whiteside*, 214 S.W.2d at 850–51; *Flowers v. Shearer*, 107 S.W.2d 1049, 1054 (Tex. Civ. App.—Amarillo 1937, writ dism'd).

A measure may be identified in many ways, but not all suit the ballot. News commentary might identify it by popular title. Local officials could refer to it by a number. Special interest groups may discuss it by reference to details that incidentally impact them but nonetheless fall short of being "chief features." Citizens may discuss it in any number of ways. But, on the ballot, the identification must be formal and sure; it must capture the measure's essence. Implicit in the common law standard is that though neither the entire measure nor its every detail need be on the ballot, the importance and formality of an election still demand a threshold level of detail. The common law standard prevents confusion at the ballot box over measures voters are already familiar with by ensuring that propositions identify measures for what they are. In other words, though voters are presumed to be already familiar with measures before reaching the voting booth, they can still be misled by an incomplete ballot description. Given the importance of the ballot, the common law relies on more than just a presumption; it ensures that the ballot informs voters of the chief features of the measures they vote on.

In an election contest challenging the sufficiency of the ballot description, the issue is whether the ballot "substantially submits the question . . . with such definiteness and certainty that the voters are not misled." *Reynolds Land & Cattle Co.*, 12 S.W. at 165. An inadequate description may fail to do that in either of two ways. First, it may affirmatively misrepresent the measure's character and purpose or its chief features. Second, it may mislead the voters by omitting certain chief features that reflect its character and purpose. The common law standard thus requires that the ballot identify the measure for what it is, and a description that does either of the foregoing fails to

8

comply with the standard. The common law safeguards the election, preventing voters from being misled and ensuring that the ballot substantially submits the measure.

Accordingly, we disapprove of language suggesting that the ballot need *only* "direct[] [the voter] to the amendment so that he can discern its identity and distinguish it from other propositions on the ballot."[12] True, the ballot should allow voters to identify and distinguish the different propositions, but in the process, it must also substantially submit the measure with definiteness and certainty.

Here, the ballot stated that the amendment would create a pay-as-you-go fund for drainage and streets. But the ballot did not identify a central aspect of the amendment: the drainage charges to be imposed on benefitting real property owners across the city. Such charges imposed directly on most residents of Houston are a chief feature of the amendment, part of the amendment's character and purpose. Merely stating that a fund is being established provides little definiteness or certainty about something important to the people—will they directly pay for it? Because the ballot did not mention the charges, it fell short of identifying the measure for what it is—a funding mechanism and fiscal burden on benefitting property owners. Failing to identify something for what it is can be misleading, even for those presumed to be familiar with it. Again, not every detail need be on the ballot, and short, general descriptions are often acceptable. But when the citizens must fund the measure out of their own pockets, this is a chief feature that should be on the ballot, and its omission was misleading.

---

[12] *See, e.g.*, *In re Roof*, 2012 WL 1072038, at *1; *McAllen Police Officers Union*, 221 S.W.3d at 895; *Brown v. Blum*, 9 S.W.3d at 848; *Rooms With a View, Inc.*, 7 S.W.3d at 850; *Hardy*, 849 S.W.2d at 358; *Hill*, 414 S.W.2d at 692.

Though our past decisions demonstrate that municipalities generally have broad discretion in wording propositions, they do not suggest that this discretion is unlimited.  For example, in *Reynolds Land & Cattle Co.*, voters adopted a tax to fund new school buildings and supplement the state school fund.  12 S.W. at 165–66.  The official order of election merely queried whether taxes "shall be levied for school purposes" without mentioning the specific purposes of building schools and supplementing the state fund.  *Id.* at 165.  Nonetheless, the order still "substantially submit[ted] the question . . . with such definiteness and certainty that the voters [were] not misled."  *Id.* at 165–66.  Similarly, in *City of Austin v. Austin Gas-Light & Coal Co.*, the electorate approved "a special additional annual tax" to help fund Austin public schools.  7 S.W. 200, 204 (Tex. 1887).  We rejected arguments that voters were confused about the details of the tax and its relationship to pre-existing taxes; the "proposition [was not] likely to mislead."  *See id.* at 205.  In both cases, the proposition identified the general purpose of the measure (school purposes) and the tax to accomplish it.  The governing authorities in these cases substantially submitted the measure by making clear all chief features.  Accordingly, the ballot was not misleading.

Our 1949 decision in *Sterling Oil & Refining Co.* likewise demonstrates that some details may be omitted from the ballot description, but it does not suggest that the proposition may fail to substantially submit the measure.  Texas voters amended the constitution, empowering the Legislature to authorize direct appeals to this Court in certain cases.  218 S.W.2d at 416; *see also* TEX. CONST. Art. V, § 3-b.  The ballot had disclosed that direct appeals could be allowed in cases involving the constitutionality of laws and regulatory orders, but it had not mentioned that direct appeals could also be authorized in cases regarding the validity of a regulatory order on grounds

other than the constitution. *Id.* at 416–17. Nonetheless, the description was sufficient. *Id.* at 418. The pre-election notices ensured the voters were "familiar with the amendment and its purposes when they cast their ballots." *Id.* Thus, the ballot omitted technical information about some types of direct appeals that could be authorized, but it still described the chief features of the amendment. In contrast, in this case, the ballot withheld a central component of the charter amendment—the drainage charges—essential to the character of the amendment.

The City notes that only twice have courts of appeals sided against the governing authority in disputes over ballot language. *See McAllen Police Officers Union*, 221 S.W.3d at 895; *Turner*, 201 S.W.2d at 91. Yet, importantly, almost none of the cases upholding an election involved a proposition that did not mention widespread charges against the citizenry.[13] Indeed, in several early cases, we refused the writ where the lower court correctly upheld the election because the proposition disclosed the purpose of the measure and the costs the citizens would directly bear. In *Beeman v. Mays*, the ballot allowed voting "For School Tax" and "Against School Tax," whereas it should have said, "For *increase* of school tax" and "Against *increase* of school tax." 163 S.W. at 359. The election was valid, *id.* at 359–60, for the ballot still described the character and purpose

---

[13] Many appellate cases regarding the sufficiency of ballot descriptions have related, to some extent, to widespread taxes. In almost all of these, the ballot disclosed that the tax would be imposed. *See, e.g.*, *Wright*, 520 S.W.2d at 789; *Whiteside*, 214 S.W.2d at 849; *Texsan Serv. Co. v. City of Nixon*, 158 S.W.2d 88, 90 (Tex. Civ. App.—San Antonio 1941, writ ref'd); *Moerschell v. City of Eagle Lake*, 236 S.W. 996, 998 (Tex. Civ. App.—Galveston 1921, writ ref'd); *Beeman v. Mays*, 163 S.W. 358, 359 (Tex. Civ. App.—Dallas 1914, writ ref'd); *cf. Wiederkehr v. Luna*, 297 S.W.2d 243, 245 (Tex. Civ. App.—Waco 1956, no writ) (upholding election where three related propositions were voted on, two of which mentioned the tax that would be imposed). *But see Cameron v. City of Waco*, 8 S.W.2d 249, 255 (Tex. Civ. App.—Waco 1928, no writ) (holding that bond election was valid although election order did not mention the levy of taxes to pay the interest on the bonds). Here, although the Contestants conceded at oral argument that the drainage charges are not a tax (at least insofar as the charges were not used to improve streets), a question we need not reach, the point is the same: the ballot must substantially submit the measure.

of the measure. *See also Moerschell*, 236 S.W. at 998, 1000 (upholding proposition about "continu[ing] or discontin[uing]" a tax even though the election arguably concerned a new tax). And in *Texsan Service Co. v. City of Nixon*, the propositions in a bond election stated they concerned "funds to aid in the construction, purchase, extension *and* improvement" of waterworks and sewer systems, without expressly mentioning that the city could choose between constructing *or* purchasing the systems. 158 S.W.2d 88, 90 (Tex. Civ. App.—San Antonio 1941, writ ref'd) (emphasis added). Voters would understand that the city could choose to construct or purchase the systems, and the ballot was not "misleading and confusing." *Id.* at 91. These cases involved, at most, technical errors, and contrast sharply with the City's failure to disclose on the ballot that many voters would face new drainage charges.

The City emphasizes that one court of civil appeals once upheld a six-word proposition submitting an entire city charter to a vote, *see England*, 269 S.W.2d at 816, and that another held that the two words "maintenance tax" sufficiently described a school-tax measure, *see Wright*, 520 S.W.2d at 790, 792. Texas law, however, now prevents the entire charter from being submitted to voters as a whole; instead, the charter shall be prepared "so that to the extent practicable each subject may be voted on separately." TEX. LOC. GOV'T CODE § 9.003(c). This statutory requirement reflects what the common law has always been—that the measure should be substantially submitted with definiteness and certainty to the voters. And, though mere use of the two words "maintenance tax" is suspect, at least it acknowledged the direct fiscal impact to citizens—something that the ballot in the present case failed to do. In neither of these cases did the governing authority omit such a central

12

feature as in this case. In neither case did the governing authority so clearly fail to substantially submit the measure with such definiteness and certainty that voters would not be misled.

Thus, both we and the courts of appeals have generally upheld ballot descriptions identifying the character and purpose of the proposition. Schools and taxes. Direct appeals. Waterworks and bonds. But the proposition in this case contrasts sharply with the others—it did not mention the drainage charges to be imposed on most real property owners across the city. Because the proposition omitted a chief feature—part of the character and purpose—of the measure, it did not substantially submit the measure with such definiteness and certainty that voters would not be misled. Accordingly, the proposition was inadequate, and summary judgment should not have been granted in the City's favor.

In reaching this conclusion, we do not consider the Contestant's evidence that some voters were subjectively confused about the nature of the measure. Those who oppose election results will always be able to find voters who claim to have been misled. Admittedly, some court of appeals decisions have suggested that such evidence may be considered.[14] Nonetheless, we base our decision solely on the failure of the proposition to present the measure's chief features and its character and

---

[14] *See, e.g.*, *Hardy*, 849 S.W.2d at 358 ("These voters did not, however, state that they were unable to distinguish this particular proposition from the other twelve propositions on the ballot, nor does Podesta assert that any voters had this difficulty."); *Hill*, 414 S.W.2d at 693 ("No voter is shown to have been deceived or misled by the proposition as stated on the ballot."); *Wiederkehr*, 297 S.W.2d at 247 ("[T]here is no evidence in the case at bar that any elector was misled or deceived by the ballot proposition employed."); *Whiteside*, 214 S.W.2d at 851 ("It is not shown that any voter was misled or deceived by the form of submission of this amendment."); *Moerschell*, 236 S.W. at 1000 ("[T]here is neither contention that they did not understand what they were voting on nor that a different result would have followed if the proposition had been for or against the levy of such a tax as appellant suggests it should have been.").

purpose. Because the ballot omitted a chief feature of the measure, it did not substantially submit the measure with such definiteness and certainty that voters would not be misled.

In an amicus brief, the Texas Municipal League and Texas City Attorneys Association urge that home rule cities should look first to their charter, not the common law, for the standard governing ballot language. Notably, although the Houston charter provides no means for amending the charter, the Texas Local Government Code does. *See* TEX. LOC. GOV'T CODE § 9.004(a). Moreover, the Texas Election Code, not the City's charter, authorizes election contests. *See* TEX. ELEC. CODE § 233.001. Accordingly, state statutes and common law govern this dispute. Our common law prohibits the City from submitting such an amendment to the voters without disclosing on the ballot that many of them will pay for it out of their own pockets.

## IV. Conclusion

The City did not adequately describe the chief features—the character and purpose—of the charter amendment on the ballot. By omitting the drainage charges, it failed to substantially submit the measure with such definiteness and certainty that voters would not be misled. Accordingly, summary judgment should not have been granted in the City's favor. We reverse the judgment of the court of appeals, and, because only the City moved for summary judgment, remand to the trial court for further proceedings consistent with this opinion.

 

John P. Devine
Justice

Opinion Delivered: June 12, 2015

14