# IN THE SUPREME COURT OF TEXAS

══════════

No. 21-0170

══════════

══════════════════════════════

IN RE LINDA DURNIN, ERIC KROHN, AND MICHAEL LOVINS, RELATORS

══════════════════════════════

══════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

══════════════════════════════

JUSTICE BLACKLOCK delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE BLAND, and JUSTICE HUDDLE joined.

JUSTICE BOYD filed a dissenting opinion, in which JUSTICE DEVINE and JUSTICE BUSBY joined.

Voters in the City of Austin will soon decide whether to adopt a citizen-initiated ordinance regarding camping in public spaces, sitting and lying down on public sidewalks, and the aggressive solicitation of money. The Austin City Council recently approved a description of the proposed ordinance for placement on the ballot. In response, several voters who signed the petition supporting the ordinance brought this mandamus proceeding seeking changes to the Council's ballot language.

We conclude the relators have clearly established their entitlement to mandamus relief in one respect. The Council's ballot language says the proposed ordinance "create[s] a criminal offense and a penalty for anyone sitting or lying down on a public sidewalk or sleeping outdoors [in or near downtown]" and for "anyone camping in a public area not designated by the Parks and Recreation Department." The ordinance itself, however, does not apply to *anyone* who engages in the listed activities. To the contrary, the ordinance contains several exceptions covering a

variety of common uses of the sidewalk that the ordinance does not criminalize. Thus, only a subset of those who engage in the covered behavior—not just anyone—can be penalized under the ordinance.

Although "anyone" is just one word, it is quite an important word in this context. Including it on the ballot as directed by the Council would suggest to voters that the ordinance criminalizes and penalizes a much wider swath of conduct than it actually does. In this regard, the word "anyone" in the Council's ballot language threatens to "mislead the voters" by "misrepresent[ing] the measure's character and purpose or its chief features." *Dacus v. Parker*, 466 S.W.3d 820, 826 (Tex. 2015). The defect can be remedied with minimal judicial interference by striking the word "anyone" in the two places it appears. As explained below, the petition for writ of mandamus is conditionally granted in part, and the City Council is directed to delete both uses of the word "anyone" from the proposition before placing it on the ballot.

## I. Background

Relators Linda Durnin, Eric Krohn, and Michael Lovins, along with many others, signed a petition seeking a voter-initiated city ordinance regarding camping, sitting or lying down on public sidewalks, sleeping outdoors, and the aggressive solicitation of money. The ordinance would amend sections 9-4-11, 9-4-13, and 9-4-14 of the City Code. The petition was submitted to the Austin City Clerk on January 19, 2021, who certified it for a vote at the City's May 1, 2021 election. The City Council was then put to a choice of agreeing to the proposed ordinance or submitting it to the voters. AUSTIN CHARTER art. iv, § 4. The City Council decided to submit the

2

ordinance to the voters. On February 9, the Council approved the following language for use on the May ballot:

> Shall an ordinance be adopted that would create a criminal offense and a penalty for anyone sitting or lying down on a public sidewalk or sleeping outdoors in and near the Downtown area and the area around the University of Texas campus; create a criminal offense and penalty for solicitation, defined as requesting money or another thing of value, at specific hours and locations or for solicitation in a public area that is deemed aggressive in manner; create a criminal offense and penalty for anyone camping in a public area not designated by the Parks and Recreation Department?

Upon approval of this ballot language, relators on February 16 simultaneously sought mandamus relief in the Third Court of Appeals and the Supreme Court. They lodge three primary objections to the ballot language. First, they argue that it violates the Austin City Charter, which they contend requires the ballot language to come from the ordinance's caption provided by the petition's proponents. Second, they argue the ballot language is misleading because it over-emphasizes the ordinance's criminal aspects. Third, they argue the ballot language's use of the word "anyone" is misleading because the ordinance contains several exceptions and therefore does not penalize "anyone" who engages in the listed activities.

The court of appeals denied relief without opinion. The City filed a response to the mandamus petition in this Court, which we have considered along with the parties' court of appeals filings.

## II. Discussion

This Court has jurisdiction to "issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election." TEX. ELEC. CODE § 273.061. As always, mandamus relief is appropriate if the relator establishes a clear abuse of discretion for

3

which there is no adequate appellate remedy. *In re AutoNation, Inc.*, 228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding). Signers of an initiative petition have standing to seek mandamus relief against their city council if they can establish the elements for such relief. *In re Williams*, 470 S.W.3d 819, 822 (Tex. 2015) (orig. proceeding) (per curiam). If a ballot can be corrected prior to the election, a post-election contest is an inadequate remedy for mandamus purposes. *Id.* at 823.

The City of Austin's charter provides a mechanism by which voters may amend the city's ordinances. Voters may submit a signed petition to the City Council proposing a new ordinance. AUSTIN CHARTER art. iv, § 1. After the City Clerk certifies that the petition contains at least the minimum required number of signatures, the Council must either adopt the proposed ordinance itself or order an election whereby the voters decide whether to adopt the ordinance. *Id.* § 4. In this case, 20,000 signatures were required. *Id.* § 1; TEX. LOC. GOV'T CODE § 9.004(a).

Under the Election Code, a "measure" is "a question or proposal submitted in an election for an expression of the voters' will." TEX. ELEC. CODE § 1.005(12). Here, the measure is the proposed amendment to the City Code submitted by voters via their petition. A "proposition" is "the wording appearing on a ballot to identify the measure." *Id.* § 1.005(15). The Election Code grants the City Council, as "the authority ordering the election," the responsibility to "prescribe the wording of a proposition" unless "otherwise provided by law." *Id.* § 52.072(a); *see also Dacus*, 466 S.W.3d at 823.

The relators contend that the Austin City Charter removes the Council's statutory authority to select ballot proposition language. The charter provides: "The ballot used in voting upon an initiated or referred ordinance shall state the caption of the ordinance and below the caption shall

4

set forth on separate lines the words, 'For the Ordinance' and 'Against the Ordinance.'" AUSTIN CHARTER art. iv, § 5. The City disagrees about the charter's effect on the Council's authority. Without resolving the merits of this dispute, we conclude that in this expedited proceeding the relators have not made the clear showing required for emergency mandamus relief on this issue.

Relators also contend the Council's ballot language violates the common-law standards governing the accuracy of ballot propositions, which this Court most recently articulated in *Dacus v. Parker*, 466 S.W.3d 820 (Tex. 2015). In *Dacus*, we held that ballot propositions must "be submitted [to the voters] with such definiteness and certainty that voters are not misled." *Id.* at 822. Although "the ballot need not reproduce the text of the amendment or mention every detail, it must substantially identify the amendment's purpose, character, and chief features." *Id.* A ballot proposition may mislead the voters "in either of two ways. First, it may affirmatively misrepresent the measure's character and purpose or its chief features. Second, it may mislead the voters by omitting certain chief features that reflect its character and purpose." *Id.* at 826.

In *Dacus*, the proposed amendment to the City of Houston Charter created a fund for drainage and streets. The source of the funding was to come in part from charges imposed on property owners. This Court held that the ballot language violated the common-law standard because it described the new fund but did not disclose that property owners would be subjected to new charges. *Id.* at 824, 826. We concluded that omitting any mention of the new charges amounted to a failure to disclose "a chief feature" of the measure, thus rendering the proposition misleading to the voters. *Id.* at 828. Despite ordering changes to the proposition, *Dacus* emphasized that "municipalities generally have broad discretion in wording propositions." *Id.* at

5

826. Ballot language "must capture the measure's essence," but "neither the entire measure nor its every detail need be on the ballot." *Id.* at 825.

Relators make two separate challenges to the Council's ballot language under the common-law standard. First, they argue the ballot language is misleading because it places undue emphasis on the extent to which the proposed ordinance creates criminal offenses and penalties. Relators do not deny, however, that the ordinance adds to the crimes and penalties currently contained in the City Code. Relators contend the ballot language should emphasize other features of the ordinance, but the Council generally has "broad discretion in wording propositions." *Id*. at 826. The proposition correctly states that the ordinance creates criminal offenses and penalties. Relators would prefer that this aspect of the ordinance appear less prominently in the proposition, but it is not the courts' job to micromanage the sentence structure of ballot propositions. Our job is to ensure voters are not misled by inaccuracies or material omissions in the proposition while preserving the governing body's discretion to select ballot language.

We agree with relators, however, that the Council's proposition is inaccurate and misleading in one important respect. The proposition states that the ordinance creates a criminal offense and a penalty "for anyone sitting or lying down on a public sidewalk" in the downtown or UT-Austin area. Although the ordinance does criminalize *some* instances of sitting or lying down on a sidewalk, by using the word "anyone," the proposition gives the impression that the ordinance criminalizes *all* instances of sitting or lying down on a sidewalk. That is not true.

The proposed ordinance creates an offense under subsection E of section 9-4-14 of the Code if a person sits or lies down in certain designated areas, but subsection F simultaneously

6

creates six exceptions. Excepted from the ordinance's criminal penalties is anyone who "sits or lies down because of a medical emergency"; "operates or patronizes a commercial establishment that conducts business on the sidewalk"; "participates in or views a parade, festival, performance, rally, demonstration, or similar event"; sits on a chair or bench supplied by an agency or abutting private property owner; sits at a bus stop; or waits in line for goods, services, or a public event. These exceptions include a wide array of familiar uses of sidewalks that will not be criminalized under the proposed ordinance. Further, even a person whose use of the sidewalk does not fall under an exception commits the offense only if the person does so "after having been notified by a law enforcement officer that the conduct" is illegal. Still further, a person has an affirmative defense if he sits or lies down because of a disability.

By failing to mention these exceptions and instead stating that the ordinance penalizes *anyone* who sits or lies down on the sidewalk, the Council's proposition suggests that the ordinance's prohibition on certain uses of the sidewalk sweeps much more broadly than it truly does. The proposition's misleading use of "anyone," without qualification, "affirmatively misrepresent[s] the measure's character and purpose or its chief features." *Dacus*, 466 S.W.3d at 826. At a minimum, the word "anyone" must be struck from the proposition so that voters are not misled about what their vote for or against the ordinance means.

Similarly, the proposition states that the ordinance creates criminal liability "for anyone camping in any public area not designated by the Parks and Recreation Department." Again, the use of the word "anyone" is misleadingly broad. The proposed ordinance reimposes a previous city ban on camping under section 9-4-11 of the Code, but that section retains a significant

7

exception. The exception prohibits a law enforcement officer from citing a person for illegal camping before making a reasonable effort to "(1) advise the person of a lawful alternative place to camp; (2) advise the person, to the best of the law enforcement officer's knowledge, of available shelter or housing; and (3) contact, if reasonable and appropriate, a city designee who has the authority to offer to transport the person or provide the person with services." Thus, not "anyone" who camps in a public area not expressly designated for camping is subject to a penalty. The City Council must omit the second use of the word "anyone" from the proposition to avoid misleading the voters.

The City argues that the proposition's use of "anyone" is accurate because, despite the ordinance's many exceptions, anyone who sits or lies down on a sidewalk or impermissibly camps "remains criminally exposed" and "[i]t would be up to those charged to invoke the exception." We are not convinced. Subsection F states that the prohibition on sitting or lying down on the sidewalk "does not apply" in the six circumstances provided. Unlike subsection G, which expressly recognizes "an affirmative defense" for a person with a disability, subsection F does not suggest that it would be up to those charged to invoke its exceptions. In any event, whether or not the ordinance's many exceptions are characterized as affirmative defenses as a matter of criminal procedure, it is not accurate to say the "character and purpose" of the proposed ordinance is to penalize conduct that falls within an exception. Quite the opposite. The "character and purpose" of the ordinance is to criminalize prohibited conduct that does *not* fall under an exception and to avoid criminalizing conduct that *does* fall under an exception. The proposition's use, in both instances, of the word "anyone" serves no constructive purpose and creates a false impression that

8

the proposed ordinance sweeps more broadly than it truly does. Including the word "anyone" as directed by the Council results in a proposition that fails to "capture the measure's essence." *Dacus*, 466 S.W.3d at 825. The word must be deleted, in both instances, so that the proposition does not impermissibly mislead voters.

### III. Conclusion

For the foregoing reasons, and without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant mandamus relief directing the City Council to delete from the ballot proposition both uses of the word "anyone." We are confident the City Council will comply, and the writ will issue only if it does not.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** March 2, 2021

9