# IN THE SUPREME COURT OF TEXAS

No. 21-0170

IN RE LINDA DURNIN, ERIC KROHN, AND MICHAEL LOVINS, RELATORS

ON PETITION FOR WRIT OF MANDAMUS

JUSTICE BOYD, joined by JUSTICE DEVINE and JUSTICE BUSBY, dissenting.

Relators have filed an emergency petition for writ of mandamus challenging proposition language for a voter-initiated city ordinance that the City of Austin plans to place on the ballot for an upcoming election. Relators argue that (1) the city's charter divests the city council of any authority to select the language placed on a ballot for a voter-initiated ordinance and instead requires the council to use the ordinance's caption as set forth in the voters' petition, and (2) even if the city council had authority to select the ballot language, the city council's proposed language impermissibly misleads voters in various ways, in violation of common-law prohibitions.

"Without resolving the merits of" the relators' first argument, the Court nevertheless concludes that they have not "made the clear showing required for emergency mandamus relief on this issue." *Ante* at ___. I conclude the city charter makes the required "clear showing" for them. Although I agree that the city council's language is misleading for the reasons the Court explains, I would not reach that issue and instead would grant relief requiring the city council to place the voter-initiated language on the ballot, instead of the language the council proposes. Because the Court does not, I respectfully dissent.

## I.
## Background

"The people of the city" of Austin have expressly reserved for themselves the "power of direct legislation by initiative," under which the people may submit voter-initiated ordinances to the city clerk by a petition signed by a sufficient number of qualified voters. Austin Charter art. IV, § 1.[1] Under the circumstances of this case, state law required at least 20,000 signatures. *See* TEX. LOC. GOV'T CODE § 9.004(a). Upon the clerk's certification that the petition is compliant and signed by at least 20,000 qualified voters, the city council must either pass and adopt the voter-initiated ordinance exactly as submitted or submit it to all of the city's voters for rejection or approval. Austin Charter art. IV, § 4.

On February 3, 2021, the city clerk certified that a petition entitled "Petition to Save Austin Now by Restoring Safety and Sanity to Our City Streets" met the requirements to appear on the ballot at a May 1, 2021 special election. The petition, which included the signatures of more than 26,000 qualified voters, began with the following caption:

> We, the undersigned registered voters of the City of Austin, petition the adoption of the following citizen-initiated ordinance:
>
> A PETITIONED ORDINANCE AMENDING CITY CODE SECTION 9-4-11 RELATING TO PROHIBITING CAMPING IN PUBLIC AREAS, SECTION 9-4-13 RELATING TO PROHIBITING SOLICITATION, AND SECTION 9-4-14 RELATING TO PROHIBITING SITTING OR LYING DOWN ON PUBLIC SIDEWALKS OR SLEEPING OUTDOORS IN THE DOWNTOWN AUSTIN COMMUNITY COURT AREA; AND CREATING OFFENSES.[2]

---

[1] Available at https://library.municode.com/TX/Austin/codes/code_of_ordinances?nodeId=CH.

[2] Relators assert that they initiated the proposed ordinance because the city's 2019 revisions to its ordinances have resulted in "an explosion of camping throughout all parts of the City," a "dramatic increase in aggressive

Following this caption, the petition proposed repealing and replacing part of section 9-4-11 and all of sections 9-4-13 and 9-4-14 of the current Austin City Code.

On February 8, 2021, the city attorney submitted a memo to the city council stating that it "is the responsibility of Council to determine" the language that will appear on the ballot, and proposing two "ballot language options" for the voter-initiated ordinance:

Option 1

"Shall an ordinance be adopted that creates a criminal offense and a penalty to camp in public areas without a permit; solicit aggressively, or solicit in specified areas, or solicit during certain times in all public areas; or to sit, lie, or sleep outdoors in certain public areas even if not obstructing the right-of-way?"

Option 2

"Shall an ordinance be adopted that would create a criminal offense and a penalty for anyone sitting or lying down on a public sidewalk or sleeping outdoors in and near the Downtown area and the area around the University of Texas campus; create a criminal offense and penalty for solicitation, defined as requesting money or another thing of value, at specific hours and locations or for solicitation in a public area that is deemed aggressive in manner; create a criminal offense and penalty for anyone camping in any public area not designated by the Parks and Recreation Department?"

The city council approved the language of Option 2.

Relators filed petitions for writ of mandamus simultaneously in this Court and the court of appeals, arguing that (1) the city charter requires the city council to use the caption contained

---

solicitation," and an increase in crime and "concerns about public health and traffic safety." The city and its supporting amici, the National Homelessness Law Center, argue that relators' concerns can and should be addressed without "criminalizing homelessness," as the initiated ordinance would do. Because relators' right to mandamus relief does not depend on the wisdom or legality of the parties' competing policy positions, the Court need not and does not address those issues here.

within the voters' petition as the language on the ballot, and (2) alternatively, the city council's approved ballot language is misleading and violates common-law requirements.

## II.
## Voter-Initiated Ordinances

A "measure" is "a question or proposal submitted in an election for an expression of the voters' will." TEX. ELEC. CODE § 1.005(12). Voters record their votes in an election through an "official ballot." *Id.* § 52.001(a). The ballot need not recite the wording of the measure. *Dacus v. Parker*, 466 S.W.3d 820, 825 (Tex. 2015). Instead, the ballot must contain a "proposition" for the measure, which is "the wording appearing on a ballot to identify a measure." TEX. ELEC. CODE § 1.005(15).

"Except as otherwise provided by law, the authority ordering [an] election shall prescribe the wording of a proposition that is to appear on the ballot." *Id.* § 52.072(a). In this case, the city council is the authority ordering the election. The council therefore has the power to prescribe the wording of the proposition identifying the proposed ordinance, "[e]xcept as otherwise provided by law." *Id.* Relators assert, and the city agrees, that the city charter is "law" that may provide otherwise. *See id.* § 1.005(10) ("'Law' means a constitution, statute, *city charter*, or city ordinance.") (emphasis added).

Austin's city charter states: "The ballot used in voting upon an initiated or referred ordinance shall state *the caption of the ordinance* and below the caption shall set forth on separate lines the words, 'For the Ordinance' and 'Against the Ordinance.'" Austin Charter art. IV, § 5 (emphasis added). The "caption" of an ordinance is an introductory statement that gives notice of the ordinance's purpose. *Sw. Bell Tel. Co. v. Hous. Indep. Sch. Dist.*, 397 S.W.2d 419, 421–22 (Tex. 1965). The Election Code never uses or mentions any form of the word "caption." But by

requiring the ballot to state "the caption of the ordinance" and to call for votes "for" or "against" the ordinance, Austin Charter art. IV, § 5, the city charter requires the "caption of the ordinance" to serve as the "proposition"—that is, the wording on the ballot that identifies the measure—for initiated or referred ordinances.

The city charter thus requires that when a sufficient number of qualified voters join together to initiate an ordinance, and the city council elects to submit the voter-initiated ordinance to a vote of the people rather than pass the ordinance itself, the ballot submitted to the people must[3] "state *the* caption of *the* ordinance." Austin Charter, art. IV, § 5 (emphases added). The definitive article "the" refers to a particular, identifiable item. *See The*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1996) 1221 ("used as a function word to indicate that a following noun . . . is definite or has been previously specified by context [or] is a unique or particular member of its class"); *The*, DICTIONARY.COM, https://www.dictionary.com/browse/the?s=t (last visited Mar. 1, 2021) ("used, especially before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article *a* or *an*"). In the city charter, the phrase "*the* ordinance" refers to the "initiated or referred ordinance" specified in the same sentence: "The ballot used in voting upon *an initiated or referred ordinance* shall state the caption of *the ordinance* . . ." Austin Charter art. IV, § 5 (emphases added). And the phrase "*the* caption" refers to the caption of that ordinance.

The *only* caption and the *only* ordinance to which the charter's requirement can possibly refer are the caption and the ordinance stated within the petition. The charter does not say that the

---

[3] "Shall" "denotes mandatory action," leaving no room for discretion. *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 131 (Tex. 2018).

council shall "draft a proposition" or "prepare a caption" to be used on the ballot, and no other relevant caption or ordinance exists. By referring to "the caption," as opposed to "the proposition," the charter necessarily refers to the introductory statement that describes the ordinance's purpose, and it requires the city to use that caption as the ballot proposition. The sentence cannot mean anything other than that the ballot must use "the caption" provided with "the ordinance" in the voters' petition.

Here, the initiated ordinance signed by over 26,000 eligible voters provided "the caption" the city charter requires the ballot to state:

> A PETITIONED ORDINANCE AMENDING CITY CODE SECTION 9-4-11 RELATING TO PROHIBITING CAMPING IN PUBLIC AREAS, SECTION 9-4-13 RELATING TO PROHIBITING SOLICITATION, AND SECTION 9-4-14 RELATING TO PROHIBITING SITTING OR LYING DOWN ON PUBLIC SIDEWALKS OR SLEEPING OUTDOORS IN THE DOWNTOWN AUSTIN COMMUNITY COURT AREA; AND CREATING OFFENSES.

The city council had no discretion to create its own proposition or even its own caption when the law—in the form of the city's own charter—requires it to use the caption of the initiated ordinance, as provided in the certified petition.

The city argues that requiring the ballot to contain the caption submitted in a petition would make the city council "the captive of petition circulators, no matter how misleading or pernicious the language of the caption of their petition." The city does not contend that the caption at issue in this case is "misleading or pernicious," but fears that captions submitted in future petitions could be. But the city's own charter resolves that concern by expressly providing that voters may only initiate ordinances that are "not in conflict with this Charter, the state constitution, or the state laws." Austin Charter art. IV, § 1. Such "state laws" require that a ballot proposition must "identify

6

the measure by its chief features, showing its character and purpose," and must do so "with such definiteness and certainty that the voters are not misled." *Dacus*, 466 S.W.3d at 825, 830. These legal requirements apply to all ballot propositions, regardless of who drafts or proposes it. So if a certified petition were to include a caption that is "misleading or pernicious," the petition would conflict with state laws, and the city charter would deprive the voters of the authority to initiate the proposed ordinance.

## III.
### Conclusion

Based on the plain language of the City of Austin's charter, I would grant relators relief by requiring the city to state the caption contained in the voters' certified petition as the proposition on the ballot. Because the Court does not, I respectfully dissent.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: March 2, 2021