# Supreme Court of Texas

No. 25-0754

In re Jeffery Bowen,

*Relator*

On Petition for Writ of Mandamus

Statement of JUSTICE YOUNG respecting the denial of the petition for writ of mandamus.

The Austin City Council's 2025–2026 budget can be funded only with a steep tax increase, which implicates two provisions of state law. First, the tax hike is sufficiently high that it can take effect only upon voter approval. *See* Tex. Tax Code § 26.07(b). To comply with this requirement, the City's voters will approve or reject the proposed tax increase in an election this November. That election implicates the second state-law requirement: that the City use a specific form for the ballot language. *See id.* § 26.07(c). Among other things, the City must specify the tax increase's purpose. *Id.* As always, the ballot language must be accurate and not misleading. *See, e.g.*, *In re Dallas HERO*, 698 S.W.3d 242, 247–48 (Tex. 2024); *In re Petricek*, 629 S.W.3d 913, 919 (Tex. 2021); *In re Durnin*, 619 S.W.3d 250, 253 (Tex. 2021); *Dacus v. Parker*, 466 S.W.3d 820, 826 (Tex. 2015). The legislature recently codified

this jurisprudence and has provided additional new requirements. *See* Act of May 30, 2025, 89th Leg., R.S., S.B. 506 (2025).

Relator contends that the ballot language violates the law's minimum standards. The question is close. The City's lengthy purpose statement includes a laundry list of programs and then tacks on a catchall provision: "and provide for other general fund maintenance and operation expenditures included in the fiscal year 2025-2026 budget as approved or amended by City Council." In other words, what the new revenue ultimately does is increase the City's general budget; it does not, for example, deal with some unforeseen and unbudgeted event, such as a natural disaster or a large monetary judgment against the City. The risk is that a sweeping catchall paired with a loosely defined purpose may obscure what a city's increased revenue will actually cover. Cities might cherry-pick popular initiatives to list on the ballot but mostly spend increased tax revenue on other programs. Here, however, it appears that the City has allocated a meaningful portion of the increased revenue to the specifically enumerated programs.

Yet the *effect* of a voter-approved tax increase goes beyond funding a particular year's budget, even though the election directly concerns only whether voters approve the adopted tax rate for the specific year. Each year, a city must calculate its "voter-approval tax rate," Tex. Tax Code § 26.04(c), which in significant part depends on the revenue generated from taxes levied the previous year, *id.* § 26.04(c)(2). That is, a larger tax-rate increase this year—and its accompanying higher tax revenues— affects future tax rates because the voter-approval tax rate "provides cities and counties with about the same amount of tax revenue it spent

2

the previous year . . . plus an extra three and a half percent," Tex. Comptroller of Pub. Accts., Truth-In-Taxation: Tax Rate Adoption, https://comptroller.texas.gov/taxes/property-tax/truth-in-taxation, and additional future elections are required only if the City Council seeks a higher rate for additional tax revenue beyond *that* amount, Tex. Tax Code § 26.07(b). A big tax hike in one year thus can have a significant compounding effect in later years—a consequence that state law allows. (The City responds, perhaps more as a matter of theory than practice, that it might *lower* taxes in future years.)

Telling voters that this tax increase will fund the 2025–2026 budget is therefore not technically wrong. But it is also easy to see how ballot language that is not exactly false can nonetheless edge toward or proceed past the line separating technically accurate and misleading.

Particularly given the high burden to obtain mandamus, I cannot say that the Court is wrong to deny relief here. Denying mandamus today constitutes no precedent and is no endorsement (and of course no condemnation) of this ballot language. It bears repeating that "this Court's failure to grant a petition for writ of mandamus is not an adjudication of, nor even a comment on, the merits of a case in any respect, including whether mandamus relief was available." *In re AIU Ins. Co.*, 148 S.W.3d 109, 119 (Tex. 2004). It may well become necessary for the Court to provide further guidance about the minimum standards for ballot language in the context of soliciting and deploying the People's hard-earned money. Before doing so, the Court (and the public) will benefit from seeing if the new legislation, which is not the subject of the parties' briefing, clarifies this area of the law. And if the legislature

3

concludes that cities are just barely complying with today's legal requirements, or are doing so in name only, or are given inadequate guidance by current law, it is always free to impose heightened substantive or procedural mandates for tax-increase elections—or indeed to otherwise regulate or restrict cities' authority to tax and spend.

But *this* proposed tax increase must be determined by the voters of Austin, with both proponents and opponents of the City Council's proposal having every opportunity to make their case—including, if they wish, by debating the propriety of the City Council's chosen ballot language.

Evan A. Young
Justice

**STATEMENT FILED:** September 12, 2025

4